

Michael C. Zogby
973-549-7209 Direct
973-360-9831 Fax
michael.zogby@dbr.com

*Law Offices*
600 Campus Drive
Florham Park, NJ
07932-1047

(973) 549-7000
(973) 360-9831 fax
www.drinkerbiddle.com

*A Delaware Limited
Liability Partnership*

CALIFORNIA
DELAWARE
ILLINOIS
NEW JERSEY
NEW YORK
PENNSYLVANIA
WASHINGTON D.C.
WISCONSIN

September 28, 2015

**VIA ECF AND HAND DELIVERY**

Honorable Joel Schneider
United States Magistrate Judge
U.S. District Court - District of New Jersey
Mitchell S. Cohen Building & US Courthouse
Fourth & Cooper Streets, Courtroom 3C
Camden, NJ 08101

    Re:    **In re: Benicar (Olmesartan) Products Liability Litigation
MDL No. 2606**

Dear Judge Schneider:

    We write on behalf of the Daiichi U.S. and Forest Defendants regarding plaintiffs' new and additional ESI requests.

    At the hearing on September 2, plaintiffs represented to the Court that their August 11 letter included all remaining ESI issues. On September 23, defendants served their response to the letter. A copy of the defendants' response will be provided to the Court for in camera review.

    Today, plaintiffs demanded answers to the following requests raised in a 14-page letter sent to us at 4 p.m.: (1) "an explanation of the process used to identify, collect, and produce email messages sent by custodians using non-corporate accounts"; (2) an analysis of pre-2008 email production trends; (3) "an explanation of when [group email accounts] will be produced and the efforts undertaken to identify, preserve, collect and search these data sources"; (4) identification of all "client-side" applications – so plaintiffs now want a list of all programs like Microsoft Word, Microsoft Excel, etc. used by individual

*Andrew B. Joseph
Partner responsible for
Florham Park Office*

*Established* 1849

DrinkerBiddle&Reath LLP

Honorable Joel Schneider
September 28, 2015
Page 2

employees; and (5) "an explanation of how non-text searchable data sources, e.g. voicemail, video files, are being identified and searched."

Plaintiffs also stated in this afternoon's letter that they intended to brief two issues identified as "disputes" for the first time today: (1) collection and production of calendar entries; and (2) identification of file types and extensions.

All of these requests should be denied.  This letter brief will address only the two issues that Plaintiffs said they would brief.

### *"All" Calendar Entries.*

Requests for all calendar entries were not contained in Plaintiffs' "definitive list" of ESI requests served on May 22, but instead raised for the first time during the August 5 meet and confer.  It now appears that Plaintiffs are demanding all calendar entries for all employees without limitation to scope or time.  Defendants' response is no.  As discussed with plaintiffs during the August 5 in person meet and confer, calendar invites are captured in the email archives and are being produced for the 86 custodians. Appointment and meeting requests are captured in the email archive and are being produced.  Appointment and meeting requests are captured through journaling in Microsoft Exchange 2003 and Exchange 2010.  They are ingested in the email archives, have been exported, and are being searched and produced for the custodians.  However, appointments that are not sent are not journaled, that is, sent to the archive.

The request should be denied.

82221100.1
209410/510357

DrinkerBiddle&Reath
LLP

Honorable Joel Schneider
September 28, 2015
Page 3

### *"All" File Types*.

Plaintiffs stated that they intend to brief the issue of producing all "file types," although the issue in dispute is unclear.

The ESI Protocol states the following regarding System Files: "Electronic file collection will be "De-NISTed", removing commercially available operating system and application files contained on the National Institute of Standards and Technology ("NIST") file list. Identification of NIST list matches will be through MD5 Hash values."  That is exactly what the defendants did and more.

Indeed, defendants sent correspondence to Steven Teppler, Esq. and Adam Slater, Esq. on January 28, 2015, March 20, 2015, and April 21, 2015, identifying over 800 file signatures and file extensions to be searched and providing additional information pursuant to Plaintiffs' requests.

The April 21 letter provided information about how files were extracted using both file extensions and file signatures, and about the process for manually analyzing custodial personal share folders.  Before processing documents and records stored on the custodians' computers, the file types had to be identified for extraction.  This step filtered out large volumes of system and non-user created files that do not contain usable data, for example operating system files and application executable files.  A comprehensive file type list was prepared that captured user generated and commonly used file types and signatures.

Despite several requests during meet and confer calls, as well as requests made during the June 4 and August 5 in-person meet and confer meetings with technology

82221100.1
209410/510357

DrinkerBiddle&Reath
LLP

Honorable Joel Schneider
September 28, 2015
Page 4

consultants, plaintiffs have not provided any additional suggested file extensions or file signatures. Instead, as with all other requests, Plaintiffs continued to demand in their August 11 letter "all file types and extensions."

Files are extracted based not only on their file extension, but also on the signature of the file. The file signature is a unique identifier that is used to identify the content of the file. For example, Microsoft Word documents have a unique file signature that can be used to identify Microsoft Word documents even if the file extension is changed from ".doc" to ".old," which accounts for users changing file names in the ordinary course of business. Using file signatures along with file extensions captures files for processing where the file extension has been changed or is incorrect.

The custodial personal share folders for the 86 custodians were manually analyzed to identify additional file types that could be linked to user data or commonly used file types for processing. It would take two months for defendants to re-extract, re-process, re-index, and re-search the data from the hard drives of the 86 custodians, and additional costs would be incurred for processing and hosting these documents.

In our September 23 ESI response letter, we objected to the continuing demand to search "all" file types to be produced as overly broad and unduly burdensome, requiring another manual review of each custodial device. Further, Defendants objected to Plaintiff' demand that "no relevancy decision" can be made when reviewing the file types, and the request to identify any remaining file extensions or file signatures *not extracted*, which would be extremely burdensome, time consuming, and not proportional to the requests.

DrinkerBiddle&Reath LLP

Honorable Joel Schneider
September 28, 2015
Page 5

This request should be denied.

**Conclusion**

The parties need to move past "discovery about discovery" and onto the substantive claims at issue in this litigation. Plaintiffs' requests should be denied.

We appreciate Your Honor's attention to this matter.

    Respectfully submitted,

    DRINKER BIDDLE & REATH LLP

    /s/ Michael C. Zogby

    Michael C. Zogby

cc:    Christopher Coffin, Esq.
       Adam M. Slater, Esq.