[Doc. No. 886]

## THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| IN RE: BENICAR (OLMESARTAN) : | Master Docket |
| : | No. 15-2606 (RBK/JS) |
| PRODUCTS LIABILITY LITIGATION : | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs' motion to compel depositions and documents requests defendants to produce for deposition in the United States two German nationals employed by defendants' affiliated company in Germany. Plaintiffs also request defendants to produce its European affiliate's documents.[1] For the reasons to be discussed plaintiffs' motion is DENIED.

Background

This is an approximate 1,800 case Multidistrict Litigation ("MDL") involving defendants' olmesartan prescription drugs.[2] The named defendants are Daiichi Sankyo, Inc., Daiichi Sankyo Co.,

---

[1] Presently before the Court is plaintiffs' "Motion to Compel Depositions of Stephan Freudenthaler and Ulf Stellmacher" with a request for the production of European documents [Doc. No. 886]. The Court received defendants' opposition [Doc. No. 901] and recently held oral argument where it denied plaintiffs' motion. This Memorandum Opinion explains in more detail the basis of the Court's ruling.

[2] These drugs are Benicar®, Benicar HCT®, Azor®, and Tribenzor®.

Ltd., Daiichi Sankyo U.S. Holdings, Inc., Forest Laboratories, LLC, Forest Laboratories, Inc., Forest Pharmaceuticals, Inc., and Forest Research Institute, Inc.[3] The Daiichi defendants designed, manufactured and sold the drugs at issue.[4] For a time the Forest defendants marketed the drugs.

Daiichi Sankyo, Inc. and Daiichi Sankyo U.S. Holdings, Inc. are U.S. companies. Daiichi Sankyo, Inc. is a wholly-owned subsidiary of Daiichi Sankyo U.S. Holdings, Inc. which operates as a holding company. Daiichi Sankyo Co., Ltd. is the parent company of Daiichi Sankyo U.S. Holdings, Inc. Daiichi Sankyo, Inc. operates as the commercial home office and U.S. corporate headquarters of Daiichi Sankyo Co., Ltd., which is a Japanese corporation with its principal place of business in Japan. See generally Master Answer of Daiichi Defendants ¶¶ 20, 23-27, 30-31 [Doc. No. 82]. For the purpose of this motion the relevant Daiichi corporate business units are located in Japan, the United States and Europe.

In order to put the current discovery dispute in context it is helpful to summarize the discovery to date. An important issue addressed early in the case was to identify the documents and Electronically Stored Information (collectively, "ESI") defendants would be directed to produce. Although Daiichi does business

---

[3] For the purpose of the present motion the Forest defendants played no role.
[4] The Court will collectively refer to all the Daiichi party defendants as "Daiichi."

worldwide, early on the Court ruled that only ESI from Daiichi U.S. and Japan had to be produced.[5] October 2, 2015 Order ¶ 4. [Doc. No. 152]. After the Court held several oral arguments and discovery conferences, Orders were entered listing the extensive custodial files to be searched and the long list of English and Japanese search terms to be used. Defendants estimate that to date they produced 64 million pages of documents. Defs.' Opp'n at 5.

In order to efficiently manage this MDL and before depositions started, it was decided that the first phase of discovery would focus on only general and specific causation issues. Specifically, whether the drugs at issue caused the alleged sprue-like enteropathy ("SLE") symptoms plaintiffs complain about.[6] Thus far plaintiffs have taken twenty (20) depositions of present and former Daiichi U.S. employees and eighteen (18) depositions of present and former Daiichi Japan employees. Defs.' Opp'n at 5. We are now on the eve of the conclusion of the first phase of fact discovery. Virtually all fact discovery regarding causation issues was completed by September 30, 2016.[7] Following this phase of discovery plaintiffs' causation expert reports are due November 30, 2016,

---

[5] The Court will refer collectively to the Daiichi defendants based in the United States as "Daiichi U.S." The term "Daiichi Japan" refers to Daiichi Sankyo Co., Ltd.

[6] These include gastrointestinal symptoms such as nausea, vomiting, diarrhea and weight loss.

[7] The Court granted plaintiffs leave to take some additional depositions after September 30, 2016, but cautioned this would not extend any other scheduling deadline. See September 1, 2016 Order at 3. [Doc. No. 874].

defendants' expert reports are due January 31, 2017, expert depositions must be completed by February 28, 2017, and Daubert and summary judgment motions are due by March 31, 2017. CMO No. 26. [Doc. No. 626]. The date for the Daubert hearing has not yet been set.[8]

As noted, to date the Court has not required defendants to produce ESI from any corporate entity other than Daiichi U.S. and Japan.[9] However, this did not prevent plaintiffs from requesting foreign documents. On January 14, 2016, the Court granted plaintiffs "leave to file a discovery motion requesting the production of additional foreign documents and addressing whether the documents are within defendants' 'possession, custody or control.'" January 14, 2016 Order ¶ 9. [Doc. No. 223]. The Court has repeatedly advised the parties if good cause existed it would reconsider its prior discovery rulings made before a fulsome record was developed. The present motion to compel was filed on September 14, 2016.

---

[8] In addition to the cases in this MDL, approximately 73 related cases are consolidated in New Jersey State Court as Multicounty Litigation ("MCL"). Discovery in the federal MDL and state MCL has been coordinated. The Court anticipates a joint Daubert-type hearing will be held in the Spring or Summer of 2017. The state equivalent to Daubert is Kemp ex rel. Wright v. State, 174 N.J. 412 (2002).

[9] To be sure, however, defendants were not excused from producing responsive European documents in their possession. See October 2, 2015 Order ¶ 4. [Doc. No. 152]. This accounts for why plaintiffs' present motion relies upon foreign documents.

4

Turning to the present motion, plaintiffs ask the Court to compel defendants to produce for deposition in the United States Stephan Freudenthaler and Ulf Stellmacher, two high-ranking employees of Daiichi Sankyo Europe GmbH ("Daiichi Europe"). Pls.' Br. at 2, 12. [Doc. No. 886-1]. According to plaintiffs, Stellmacher is the Director of Daiichi Europe's clinical safety and pharmacovigilance department ("CSPV") and Freudenthaler is the "head of CSPV in Europe."[10] Id. at 1. Plaintiffs argue Stellmacher played a "central role in the global evaluation, and reporting of the health issues posed by [olmesartan] Induced Enteropathy." Id. at 6. Similarly, plaintiffs assert Freudenthaler played a "central role with regard to Olmesartan Induced SLE [sprue-like enteropathy] on a global basis." Id. at 9.

Unfortunately for the Court, the parties did not clarify the exact role CSPV plays in the global Daiichi organization.[11] On different occasions plaintiffs refer to the CSPV as a "department"

---

[10] Pharmacovigilance is defined as the "the science and activities relating to the detection, assessment, understanding and prevention of adverse effects or any other drug-related problem." See World Health Organization, Pharmacovigilance, http://www.who.int/medicines/areas/quality_safety/safety_efficac y/pharmvigi/en/ (last visited Oct. 4, 2016).

[11] The parties have never defined the precise legal-relationship between Daiichi Europe and the party defendants. The Court does not know for sure if there is a parent/subsidiary relationship or some other sort of corporate affiliation. Nevertheless, given there is no dispute that Daiichi Japan and Daiichi U.S. are separate corporate entities, the precise corporate relationship between Daiichi Europe and defendants is not determinative as to the present motion.

(id. at 2), a "[g]lobal CSPV committee" (id.), and an "organization within Daiichi Sankyo." Id. at 3. Defendants' opposition is noticeably silent on the issue and provides no assistance in trying to sort out the parties' precise corporate relationships. The Court surmises there are separate CSPV committees within Daiichi Japan, U.S. and Europe, and that representatives from these separate corporate entities are members of a global CSPV committee. The CSPV plays a critical role because it is "responsible to process, evaluate, and take action in response to reports of adverse events/adverse drug reactions." Pls.' Br. at 2.

The gravamen of plaintiffs' argument is that since Daiichi Europe is one of seven business units of Daiichi's "global management structure," defendants have sufficient control over Daiichi Europe such that defendants should be compelled to produce Stellmacher and Freudenthaler for deposition. Plaintiffs focus on the fact that Daiichi's global organization is overseen by a "'Global Management Committee' which develops global strategy and supports the CEO." Id. at 2. Plaintiffs also emphasize there is a close integration of Daiichi Japan, U.S. and Europe through the global CSPV organization. Id. at 5. Plaintiffs sum up their argument as follows:

> Freudenthaler and Stellmacher are employed by a "Business Unit" of Daiichi Sankyo Japan, are part of an integrated global organization within the overall global entity, and both have had extensive involvement with Olmesartan induced enteropathy, and they possess a host of relevant information. Thus their depositions are

> necessary and highly relevant to this litigation. Moreover, there is no particular sovereign interest at play in this case that would justify deviating from the Federal Rules of Civil Procedure, under which the depositions of Freudenthaler and Stellmacher should be compelled.

Id. at 14.

As to their request for documents from Daiichi Europe, plaintiffs cite deposition testimony from defendants' witnesses to the effect there was regular communications and exchange of information and documents between different business units around the world, including between Daiichi U.S. and Daiichi Europe. See id. at 3-4. As to plaintiffs' specific document requests, plaintiffs ask defendants to search the requested deponents' custodial files using twenty (20) English and German search terms. Plaintiffs also served nine (9) general document requests directed to Daiichi Europe. Id. at 20-22.

Not unexpectedly, defendants oppose plaintiffs' motion. Defendants argue: (1) the Court cannot compel the depositions of foreign non-party witnesses employed by a party's corporate affiliate (Defs.' Opp'n at 1-2), (2) plaintiffs have not shown good cause to take the requested depositions (id. at 4), (3) it is unduly burdensome to take the depositions (id. at 5), (4) if the depositions are taken only one deposition should be compelled (id. at 6), and (5) the requested depositions should take place in Europe or plaintiffs should have to pay the expenses related to the deponents' travel to the United States. Id. Defendants also

argue plaintiffs' document requests are cumulative, burdensome and overly broad. Id. at 11-13.

Discussion

    1.   Depositions of Stellmacher and Freudenthaler

The Court agrees with defendants that it cannot compel Stellmacher and Freudenthaler to appear in the United States to be deposed. These witnesses are employed by non-party Daiichi Europe. Pursuant to Fed. R. Civ. P. 30(b)(1) only a party or an officer, director, or managing agent of a corporate party may be compelled to give testimony pursuant to a deposition notice. Campbell v. Sedgwick Detert, Moran & Arnold, C.A. No. 11-642 (ES/SCM), 2013 WL 1314429, at *12 (D.N.J. Mar. 28, 2013); see also 8A Charles Alan Wright et al., Federal Practice and Procedure §2107 (3d ed. 2016).[12]

---

[12] Plaintiffs have not argued that Stellmacher and Freudenthaler are defendants' managing agents. Whether an individual is a "managing agent" is to be determined "pragmatically on an ad hoc basis." Wright et al., supra, § 2103 (citations omitted). Courts look to three factors to decide if a witness is a "managing agent":

> [Whether] the individual involved is invested by the corporation with general powers to exercise his discretion and judgment in dealing with corporate matters, whether he or she can be depended upon to carry out the employer's direction to give testimony at the demand of a party engaged in litigation with the employer, and whether he or she can be expected to identify with the interests of the corporation rather than with those of the other parties.

Id.; see also M.F. Bank Restoration Co. v. Elliott, Bray & Riley, C.A. No. 92-0049, 1994 WL 8131, at *2 (E.D. Pa. Jan. 11, 1994).

Since the requested deponents do not fit into these categories their depositions may not be compelled.[13]

To support their argument that the Court can compel affiliated non-party foreign witnesses to be deposed, plaintiffs primarily rely on Alcan Int'l Ltd. v. S.A. Day Mfg. Co., 176 F.R.D. 75 (W.D.N.Y. 1996). However, Alcan is an outlier that the Court declines to follow. In Alcan, the plaintiffs refused to produce for deposition employees of its German affiliate. The plaintiffs argued the noticed foreign employees were not parties to the dispute and they must be subpoenaed pursuant to the procedures authorized by the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention"). Id. at 77-78. In deciding that the plaintiffs must produce the foreign non-party witnesses, including an ex-employee, the Alcan decision focused on whether information sought from the plaintiffs' foreign affiliate was within the plaintiffs' "custody or control." Id. at 78. The court noted the "transactional relationship between the corporate entities was pivotal." Id. Importantly, the decision made no distinction between the request for the plaintiffs' documents and the request to depose employees of plaintiffs'

---

[13] Although not specifically argued by plaintiffs, Fed. R. Civ. P. 45 provides them no solace. Rule 45 does not authorize the service of a subpoena on a foreign witness. The scope of Rule 45 is limited to service in the United States or service of a subpoena on a United States national or resident in a foreign country. Fed. R. Civ. P. 45(b)(2)-(3).

foreign affiliates. Id. at 79. When it decided the plaintiffs would be compelled to produce foreign non-party witnesses from its corporate affiliate, the court noted the corporate entities were members of the same unified worldwide business entity, the entities used the same corporate logo, and the entities had regular contact. The court also noted it was "inconceivable" the plaintiffs did not have access to the requested information. Id.

The problem with Alcan is that it conflates the standard for when a corporate party must produce its affiliate's documents with the standard for which witnesses a corporate party must produce for deposition. A party is required to produce documents within its "possession, custody, or control" even if the documents are possessed by a separate entity. Haskins v. First American Title Ins. Co., C.A. No. 10-5044 (RMB/JS), 2012 WL 5183908, at *1 (D.N.J. Oct. 18, 2012). The physical location of documents, even outside the jurisdiction of the court, is irrelevant. Gerling Int'l Ins. Co. v. C.I.R., 839 F.2d 131, 140 (3d Cir. 1988) (citations omitted). However, pursuant to Fed. R. Civ. P. 30(b)(1) a corporation is only required to produce an officer, director, or managing agent for deposition. As well-stated in Ethypharm S.A. France v. Abbott Labs., 271 F.R.D. 82, 90 (D.Del. 2010), "there is no textual basis in the federal rules for [the] argument that the 'control' test is applicable to the court's consideration

regarding [the] request to depose individual witnesses pursuant to Fed. R. Civ. P. 30."

Another instructive case is <u>In re Ski Train Fire of Nov. 11, 2000 Kaprun Austria</u>, C.A. No. MDL 1428 (SAS/THK), 2006 WL 1328259 (S.D.N.Y. May 16, 2006). In that MDL the plaintiffs requested the defendant corporation to produce for deposition employees of a non-party affiliate. In support of their request the plaintiffs argued the defendant controlled the non-party affiliate. <u>Id.</u> at *9. Like the decision in <u>Ethypharm</u>, and the Court's ruling here, the court in <u>In re Ski Train Fire</u> rejected the notion that the control test is determinative as to whether a corporate party must produce for deposition employees of its foreign affiliate. The court stated:

> Unlike the language of Rule 34, Rule 30 of the Federal Rules of Civil Procedure does not require a party to litigation to produce persons for deposition who are merely alleged to be in the party's control. Rather, a party or any other person can be noticed for deposition, and subpoenaed if necessary. If the person sought for deposition is not within the subpoena power of a United States court, then procedures according to international treaty must be followed.
>
> The [non-party affiliate] employees are not employed by [the defendant]. Nor are they within the subpoena power of this or any other federal court. Therefore, they must be deposed in Austria according to Austrian procedures.

<u>Id.</u>

To the extent plaintiffs rely on <u>Calderon v. Experian Info. Sols., Inc.</u>, 290 F.R.D. 508 (D. Idaho 2013), the reliance is misplaced. In that case the district court affirmed a Magistrate

Judge's decision requiring the defendant to produce employees of its sister company in Chile for deposition. _Id._ at 510. However, the court's ruling was based in part on the finding that the requested deponents were defendants' managing agents. _Id._ at 518-19. No such argument is made here with regard to Stellmacher and Freudenthaler. Further, _Calderon_ also relied on the erroneous "control" test to determine if the defendant had to produce for deposition foreign employees of its non-party affiliated company. _Id._ at 514. As noted, the Court declines to follow the _Alcan_ "control" test for deciding when foreign employees of a party's corporate affiliate must be produced for deposition.

Plaintiffs' reliance is also misplaced to the extent they rely on cases addressing whether a corporate party must obtain information from its foreign affiliate in response to a Rule 30(b)(6) notice. When served with a Rule 30(b)(6) notice a corporation has a duty to prepare its witness to testify as to matters known or reasonably available to the corporation. _Harris v. New Jersey_, 259 F.R.D. 89, 92 (D.N.J. 2007). Courts use the "control" standard of Fed. R. Civ. P. 34(a) as a guidepost to determine whether a Rule 30(b)(6) witness must testify as to the knowledge of non-party corporate affiliates. _Sanofi-Aventis v. Sandoz, Inc._, 272 F.R.D. 391, 394-95 (D.N.J. 2011). Thus, if a corporate defendant controls information possessed by a non-party foreign affiliate, the knowledge is subject to the Rule 30(b)(6)

12

deposition notice. Id. at 395. The fact that a Rule 30(b)(6) corporate designee may be compelled to testify about information possessed by a foreign corporate affiliate is not the same issue as whether a non-party foreign employee may be compelled to testify pursuant to Fed. R. Civ. P. 30(b)(1). The Rule 30(b)(6) cases plaintiffs rely upon are inapposite.

Even though defendants may not be compelled to produce Stellmacher and Freudenthaler for deposition, the deposition inquiry is not at an end. If good cause exists to take the depositions plaintiffs may proceed pursuant to the provisions of the Hague Convention and the conditions imposed by the German Ministry of Justice.[14] For the following reasons, however, the Court finds that at this time plaintiffs have not established good cause to depose Stellmacher and Freudenthaler.[15]

---

[14] Good cause is necessary to take additional depositions because plaintiffs have or will shortly complete the maximum number of permitted depositions. See Nov. 23, 2015 Order ¶ 1. [Doc. No. 194]. Further, the cumbersome procedures required by the German Ministry of Justice are summarized in Pinnacle Packaging Co., Inc. v. Constantia Flexibles GmbH, C.A. No. 12-537 (JED/TLW), 2015 WL 9216845, at *2-3 (N.D. Okla. Dec. 17, 2015).

[15] To the extent plaintiffs rely upon the Supreme Court's decision in Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for S. Dist. of Iowa, 482 U.S. 522 (1987), to excuse compliance with the Hague Convention, the reliance is misplaced. In that decision the Court held the Hague Convention does not provide the exclusive and mandatory procedure for obtaining documents and information located within the foreign territory of a party's foreign affiliate. Id. at 534-38. The decision did not address a request to depose a foreign national employed by a party's foreign affiliate.

To date plaintiffs' discovery directed to defendants has been extensive, lengthy and costly. Defendants have produced tens of millions of document and thus far plaintiffs have taken thirty-eight (38) Daiichi fact depositions. Given the breath of plaintiffs' discovery the Court is disinclined to authorize more depositions unless the new testimony is likely to be materially important and non-cumulative. Stated differently, the requested depositions must be "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In view of the Court's intimate knowledge of the litigation, and the fact that the current focus of discovery is general and specific causation, the Court finds that in this instance the proportionality analysis weighs in defendants' favor. CDK Glob., LLC v. Tulley Auto. Grp., Inc., C.A. No. 15-3103 (KM/JBC), 2016 WL 1718100, at *9 (D.N.J. Apr. 29, 2016) (citation omitted) (stating Rule 26(b)(1) authorizes a court to limit "redundant or disproportionate discovery").

Given their positions with the CSPV it is undoubtedly the case that Stellmacher and Freudenthaler possess relevant knowledge. Nevertheless, this is not the touchstone for whether they should be deposed. Instead, what is compelling is the fact it is likely the causation testimony plaintiffs want to address with the new witnesses has already been covered at other depositions, including the ten (10) pharmacovigilance employees of Daiichi U.S. and Daiichi Japan already deposed. This being the case the burden

14

and expense associated with taking the requested foreign depositions outweighs the likely benefit of the requested testimony.

Plaintiffs' arguments directed to the interrelatedness of the different Daiichi companies undercuts their need to depose Stellmacher and Freudenthaler. Plaintiffs repeatedly focus on Daiichi's global management structure, the control exercised by Daiichi Japan, and the ease and frequency with which information is shared amongst Daiichi's different business units. This being the case, it is likely the bulk of the relevant causation knowledge possessed by Stellmacher and Freudenthaler has or could have been obtained from the thirty-eight (38) Daiichi witnesses deposed to date. Given defendants' corporate structure and global management, the Court is skeptical that meaningful discovery regarding any alleged causal connection between defendants' olmesartan drugs and plaintiffs' symptoms is singularly possessed by Stellmacher, Freudenthaler, or even Daiichi Europe. This conclusion is supported by the deposition testimony plaintiffs cite to the effect that there was an effort to be consistent amongst Daiichi's business units (Pls.' Br. at 4), and decisions with a global impact were made with input from Daiichi U.S., Japan and Europe. Id. at 5.

Plaintiffs ask to depose Stellmacher because he "played a central role in the global evaluation and reporting of the health

issues posed by [Olmesartan] Induced Enteropathy." Id. at 6. However, plaintiffs acknowledge the protocols for the operation of the global CSPV unit established principles of global signal protection in order to "ensure a consistent global approach to a safety signal." Id. Moreover, plaintiffs argue members of the Global CSPV Committee "would discuss and assess how evolving regulatory expectations in each Daiichi region could have global impact across the regions." Id. at 5. Plaintiffs' arguments, therefore, support the Court's finding it is unlikely the requested deponents have materially relevant causation knowledge not otherwise known by the thirty-eight (38) Daiichi witnesses deposed to date.

Plaintiff argue they need to depose Stellmacher and Freudenthaler because they are knowledgeable about a European Advisory Board and a report on sprue-like enteropathy prepared for German authorities that has or will address the causation issues at the heart of this MDL. Id. at 12. However, plaintiffs have not shown this information was not available from other witnesses. Moreover, since defendants allege they produced the referenced report in March 2016, plaintiffs had an opportunity to question Daiichi's deponents about the document. See Defs.' September 29, 2016 Letter. [Doc. No. 909]. If the Court permitted depositions to be taken to answer every conceivable question litigants raise, and fill every "gap" a party raises, discovery would never end.

Moreover, the Court would be abdicating its role to efficiently manage the litigation. <u>See</u> Fed. R. Civ. P. 26(b)(1) Advisory Committee Note to 2015 Amendment. ("The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes."). In sum, good cause does not exist to depose Stellmacher and Freudenthaler because plaintiffs have not shown the requested deponents possess materially relevant non-cumulative information. Plaintiffs have also not shown the information they want from the witnesses was not otherwise available from the Daiichi witnesses they already deposed.[16]

    2.   <u>Daiichi Europe's Documents</u>

Based on the present record it is not a difficult question to decide if defendants may be compelled to produce Daiichi Europe's documents. The answer is clearly yes. Defendants are required to produce documents within their control. "Courts within the Third Circuit have broadly interpreted 'control' in the context of document production." <u>Sanofi-Aventis</u>, 272 F.R.D. at 394 (citing <u>Camden Iron & Metal, Inc. v. Marubeni Am. Corp.</u>, 138 F.R.D. 438,

---

[16] The Court is not sympathetic to defendants' argument that the burden of the requested depositions is a material factor weighing in their favor. While being deposed might be unpleasant for Stellmacher and Freudenthaler, the burden they will endure is not materially different than that experienced by tens of thousands of witnesses. Further, the Court is mindful that the alleged burden to the two requested deponents is not weighed against the interests of just one plaintiff. Instead, the interests of approximately 1,800 plaintiffs are at issue.

441 (D.N.J. 1991)). Control is present for the purpose of a document production when a party can obtain documents from the related entity to meet its business needs. Id. (citing Gerling, 839 F.2d at 140-41); see also Camden Iron, 138 F.R.D. at 443. "[A] company's ability to demand and have access to documents in the normal course of business gives rise to the presumption that such documents are in the litigation corporation's control." Barton v. RCI, LLC, C.A. No. 10-3657 (PGS), 2013 WL 1338235, at *7 (D.N.J. Apr. 1, 2013) (quoting Camden Iron, 138 F.R.D. at 443). Plaintiffs have plainly demonstrated defendants have control over Daiichi Europe's documents.

Allen Feldman, Vice-President, CSPV, and "highest level executive in the United States CSPV department from 2004 to 2016," testified that he had the ability to get documents from Daiichi's different business units and vice-versa. Pls.' Br. at 2, 4-5. Another Daiichi U.S. witness testified it was "no big deal" to obtain documents and information from Daiichi Europe. Id. at 5. Additionally, Tina Ho, the Executive Director of Pharmacovigilance and a member of the Global CSPV Committee from 2004 to 2016, testified she interacted almost daily with Europe and Japan, and exchanged documents with them on a "routine basis." Id. The cited deposition testimony establishes that defendants can obtain documents from Daiichi Europe in the normal course of their business. Thus, plaintiffs have established that defendants have

sufficient control over Daiichi Europe's documents such that the Court may direct defendants to produce the documents. Further, it is not insignificant that defendants do not contest they have control over Daiichi Europe's documents. In view of the contentious nature of this MDL, if such control was lacking defendants undoubtedly would have vigorously contested the issue.

To be sure, however, just because defendants "control" Daiichi Europe's documents does not necessarily mean defendants will be directed to answer plaintiffs' document requests. This is true because, on the whole, the Court finds that plaintiffs' document requests are overbroad and far-reaching. For example, plaintiffs ask for all formal and informal reports and analysis of defendants' drugs, Power Points and minutes of meetings regarding the drugs, documents regarding regulatory actions in Europe, and any discussion or analysis regarding the mechanism between the drugs and sprue-like enteropathy. Id. at 21-22. These broad document requests essentially bring the parties back to square one in the litigation. These are the sort of general document requests that were served and addressed early on. The Court will not direct defendants to respond to document requests that will not advance the litigation and that will invariably result in more discovery disputes and duplicative and cumulative productions.[17]

---

[17] If the Court directs defendants to respond to plaintiffs' document requests as framed, duplicative and cumulative

19

To be clear, the Court is not foreclosing an Order directing defendants to respond to appropriate document requests asking for relevant Daiichi Europe documents that have not already been produced. Instead of general and overbroad requests, however, plaintiffs' requests must be specific, focused and narrow. In view of the tremendous efforts already devoted to this MDL, and the fact that fact discovery regarding causation issues is virtually complete, plaintiffs must specifically identify what they want rather than making omnibus requests.[18] The Court will consider directing defendants to produce additional documents from Daiichi Europe but only if plaintiffs satisfy the Court the requests are well-grounded, materially relevant and non-cumulative. Given the stakes in the litigation, the interests of justice weigh in favor of authorizing limited additional document discovery but only if plaintiffs show that materially relevant Daiichi Europe documents impacting the interests of 1800 plaintiffs have not already been produced.

---

productions are likely given the broad leeway plaintiffs were given when the Court approved their search terms and custodians.

[18] The same is true for the twenty (20) search terms plaintiffs want to use to search the custodial files of Stellmacher and Freudenthaler. Searches using general terms such as "sprue-like enteropathy," "enteropathy," and "diarrhea" (id. at 20-21) will undoubtedly result in unnecessary and cumulative hits.

Conclusion and Order

     Accordingly, for all the reasons discussed above,

     IT IS HEREBY ORDERED this 4th day of October, 2016, that plaintiff's Motion to Compel is DENIED.


          /s Joel Schneider
          JOEL SCHNEIDER
          United States Magistrate Judge