IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                    :
IN RE: BENICAR (OLMESARTAN)         :   Master Docket
                                    :   No. 15-2606 (RBK/JS)
PRODUCTS LIABILITY LITIGATION       :
                                    :
                                    :
                                    :
                                    :
_____ :

### MEMORANDUM OPINION AND ORDER

The discovery issue before the Court is whether two of plaintiffs' medical experts must produce redacted copies of patient medical records they considered in forming their expert opinions.[1] The Court received the parties' written submissions and held oral argument on March 8, 2017. For the reasons to be discussed, plaintiffs will be Ordered to produce the requested

---

[1] The Court reframed for the parties the issue to be decided. Defendants' March 3, 2017 letter application [Doc. No. 1039] seeks an Order barring plaintiffs' experts from testifying "with regard to their experience with patients on olmesartan or their review of the clinical charts of such patients." The application also seeks an Order stating the experts may not rely upon their "experience with patients on olmesartan or their review of the clinical charts of such patients as set forth in their reports, deposition testimony or live testimony." Id. at 2. If plaintiffs are required to produce the requested records the proposed sanction is disproportional to the alleged harm caused by plaintiffs' failure to produce. See Younes v. 7-Eleven, Inc., 312 F.R.D. 692, 713 (D.N.J. 2015)(citation and quotation omitted)(just sanctions are those that impose proportional discipline for the harm caused). The striking of plaintiffs' expert testimony is too severe a sanction when the alleged prejudice to defendants can be cured by producing the medical records at issue. All doubts should be resolved in favor of reaching a decision on the merits. Id.

1

records.

Background

In brief summary, this is an approximate 1800 case Multidistrict Litigation involving defendants' olmesartan prescription drugs. Plaintiffs allege the drugs caused the sprue-like enteropathy symptoms they complain about. In accordance with the Court's schedule, plaintiffs recently produced their general and specific causation expert reports. The two experts at issue, Dr. Benjamin Lebwohl and Dr. Stephen M. Lagana, were recently deposed and confirmed they considered certain patient medical records in reaching their opinions.[2] Plaintiffs object to producing the records.

Discussion

The resolution of this discovery dispute is dictated by Rule 26(a)(2)(B)(ii) which provides that, "the facts or data considered by the [expert] witness" in forming his/her opinions must be disclosed. The advisory committee note accompanying the 2010 amendments to Rule 26(a)(2)(B) explains that:

> Rule 26(a)(2)(B)(ii) is amended to provide that disclosure include all "facts or data considered by

---

[2] Drs. Lebwohl and Lagana are employees of Columbia Presbyterian University Hospital. Dr. Lebwohl is a gastroenterologist and celiac specialist and has a Masters in epidemiology. Dr. Lagana is a pathologist with a focus on gastrointestinal pathology. Both doctors have been involved in the clinical diagnosis and treatment of patients with olmesartan enteropathy. See Plaintiffs' March 2, 2017 Letter Brief ("LB") at 1-2, Doc. No. 1041.

> the witness in forming" the opinions to be offered …[.]
>
> …
>
> The refocus of disclosure on "facts or data" is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel. **At the same time, the intention is that "facts or data" be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data "considered" by the expert in forming the opinions to be expressed, not only those relied upon by the expert.** (Emphasis supplied).[3]

A majority of courts have taken the "pro-discovery" position that "pursuant to Rule 26(a)(2)(B), a party must disclose all information provided to its testifying expert for consideration in the expert's report[.]" Synthes Spine Co., L.P. v. Walden, 232 F.R.D. 460, 463 (E.D. Pa. 2005); F.T.C. v. Lane-Labs, USA, Inc., C.A. No. 00-CV-3174 (DMC), 2008 WL 4003927, at *1 (D.N.J. Aug. 25, 2008) ("[a]lthough the case law is not uniform, the overwhelming majority of courts have required the production of any information considered by a testifying expert in reaching his or her opinion, regardless of any privilege that may otherwise exist"); Beachfront North Condominium Association,

---

[3] Rule 26(a)(2)(B) was amended in 2010 to require disclosure of the "facts or data" considered by an expert rather than "the data or other information" considered by an expert. The amendment now provides work-product protection to draft expert reports and communications between the expert and counsel. However, the amendment did not alter the broad definition of "considered." Finlkowski v. Perry, C.A. No. 11-5139, 2012 WL 2527020, at *3 (D.N.J. June 29, 2012); see also Rule 26(b)(4)(C).

3

Inc. v. Lexington Ins. Co., C.A. No. 14-6706 (RKB/JS), 2015 WL 4663429, at *3 (D.N.J. Aug. 5, 2015)(recon. den. March 9, 2016); see also Regional Airport Auth. of Louisville v. LFG, LLC, 460 F.3d 697, 714 (6th Cir. 2006)(finding that Rule 26 creates a bright-line rule requiring disclosure of all documents provided to testifying experts); Dyson Technology Ltd. v. Maytag Corp., 241 F.R.D. 247, 251 (D. Del. 2007)(holding that a party is entitled to production of information considered by the trial expert in formulating his/her opinion, including all information he or she reviewed, reflected upon, read and/or used). "[T]his bright-line rule serves important policy considerations, including the facilitation of effective cross-examination and the resolution of uncertainty as to the discoverability of documentation divulged to a testifying expert." Synthes Spine, 232 F.R.D. at 464. The Synthes Spine decision also applied a broad definition of "considered" in Rule 26(a)(2)(B) by requiring the disclosure of all information a testifying expert "generates, reviews, reflects upon, reads, and/or uses in connection with the formulation of his opinions, even if such information is ultimately rejected." Id. at 463.

The Court adopts the majority view regarding expert disclosure requirements under Rule 26(a)(2)(B). The Court also adopts the definition of "considered" from Synthes Spine. These holdings comport with the comment to Rule 26 and are consistent

4

with the language and spirit of the Rule. Given the Court's ruling the record in the case compels the conclusion that the medical records considered by plaintiffs' experts must be produced.

The record is clear that Drs. Lebwohl and Lagana "considered" the referenced patient medical records in reaching their expert opinions. Dr. Lebwohl makes this clear at p. 6 of his expert report wherein he wrote, "I reviewed the charts of our most treatment-resistant patients[.]" He also confirmed at his deposition that he relied upon the charts in reaching his ultimate conclusion and opinion. See February 10, 2017 Transcript ("Tr.") at 184:17 to 186:18. In fact, Dr. Lebwohl testified the chart review "confirmed [his] opinion." Id. at 186:14-18. Similarly, Dr. Lagana testified that as part of his investigation into olmesartan enteropathy he reviewed the charts of sixteen patients who were exposed to olmesartan who were classified as having seronegative celiac disease. February 7, 2017 Tr. at 24:16 to 26:6. Dr. Lagana confirmed that his review "contributed to [his] thinking and it seemed to [him] well beyond what you could imagine would be a chance association." Id. at 26:16 to 27:9.[4]

---

[4] During oral argument plaintiffs' counsel argued their experts' record review was done years ago and before the experts were retained for trial. This argument was not explicitly made in plaintiffs' written submissions. Further, the record does not clearly substantiate plaintiffs' assertion. Even if true,

5

Plaintiffs' arguments in opposition to producing the requested medical records are not convincing. Plaintiffs first argue the medical records "do not belong" to their experts, they do not own or control the records, and they do not have the right to produce the records. March 2, 2017 LB at 2. This broad statement is not substantiated by any competent evidence but instead is merely a conclusory statement in plaintiff's letter brief. Nonetheless, since the experts were apparently able to easily access the requested records to review them, it is likely they have "possession, custody or control" of the records.[5] Federal courts construe "control" broadly. <u>Haskins v. First American Title Ins. Co.</u>, C.A. No. 10-5044 (RMB/JS), 2012 WL 5183908, at *1 (D.N.J. Oct. 18, 2012). Control exists where a party has the legal right or ability to obtain the documents from another source upon demand. <u>Id.</u> (citation omitted). It appears from the record in the case that plaintiffs' experts have the ability to obtain the medical records they reviewed.

Plaintiffs also argue it would be burdensome to identify,

---

however, the Court's ruling would be the same. Records considered by trial experts in reaching their expert opinions must be produced. There is no temporal limitation in Rule 26(a)(2)(B). Of course, the Court is not adopting the absurd notion that medical experts must produce all of their training and scholastic documents. This ruling is only directed to the current situation where plaintiffs' testifying experts considered and relied upon a discrete and identifiable set of records.

[5] If the experts do not have possession, custody or control of the records this must be substantiated with affidavits.

collect, redact and produce the requested records. However, plaintiffs did not provide any proof to support this objection. This being the case, plaintiffs' burdensome and proportionality objections are rejected. Younes, 312 F.R.D. at 704 (citing cases)(broad-based, non-specific and general objections are meaningless and will be disregarded). Moreover, plaintiffs are concerned a ruling in defendants' favor may require testifying experts to produce hundreds or thousands of patient records. Plaintiffs' concern is misguided. Here, plaintiffs' experts testified they considered a discrete, identifiable and manageable number of records. Dr. Lebwohl only looked at charts of the most treatment-resistant patients. See Report at 6. Dr. Lagana only looked at the records of 16 patients. Therefore, it does not appear to be a material burden for plaintiffs' experts to produce the requested records. Given the importance plaintiffs place upon their experts' opinions and clinical experience, plaintiffs' proportionality objection is rejected.[6]

Last, plaintiffs argue that if the requested medical records must be produced, "[t]he most qualified experts, those who actually treat and study patients with the condition at issue, would never agree to act as an expert" because of the expense and disruption it would cause. Id. at 3. Plaintiffs'

---

[6] To be sure, the Court is not ruling that hundreds or thousands of records considered by an expert do not have to be produced. The Court will address the issue when and if it arises.

7

hyperbole is rejected. No evidence has been presented to support plaintiffs' claim. Moreover, plaintiffs' concerns do not trump the Federal Rules of Civil Procedure. Rule 26 and the applicable case law require testifying experts to produce all facts and data they consider in reaching their opinions. There is no exception for paid trial experts who happen to be treating physicians. See Lithuanian Commerce Corp., Ltd v. Sara Lee Hosiery, 177 F.R.D. 245, 271 (D.N.J. 1997)(striking expert testimony of physician regarding the medical and therapeutic benefits of L'eggs Pantyhose who did not produce the medical records of his patients upon which he relied for his opinions); In re Orthopedic Bone Screw Products Liability Litigation, No. MDL 1014, 1996 WL 900345 (E.D. Pa. July 16, 1996)(holding that defendant's expert would not be permitted to testify regarding his experience implanting pedicle screws unless he produced his redacted patient files or secured patient waivers to produce the files).

To support their argument plaintiffs rely on In re Asbestos Products Liability Litigation (No. VI), 256 F.R.D. 151 (E.D. Pa. 2009). The case is easily distinguishable because it addressed what records a doctor who examined patients to determine if they had an asbestos related disease had to produce. Unlike this case, In re Asbestos did not address Rule 26(a)(2)(B) and whether testifying experts had to produce medical records the

8

expert considered and relied upon in reaching their expert opinions. Plaintiffs' reliance on <u>Horizon Blue Cross Blue Shield of New Jersey v. Transitions Recovery Program</u>, C.A. No. 10-3197 (RBK/KMW), 2015 WL 8345537 (D.N.J. Dec. 8, 2015), is also misplaced. That case addressed whether experts should be excluded under <u>Daubert</u>. The case did not address whether medical records an expert considered in reaching his opinions had to be produced in discovery.

<u>Conclusion and Order</u>

For the reasons discussed above, it is hereby ORDERED this 13th day of March, 2017, that defendants' March 3, 2017 application is GRANTED in part and DENIED in part. By March 31, 2017, Drs. Lebwohl and Lagana shall produce or make available for inspection by defendants the medical records they "considered" in reaching their expert opinions. These are the records identified in the experts' reports and/or depositions. The records may be redacted to remove all personal identifying information; and it is further

ORDERED that if Drs. Lebwohl and Lagana allege they are not in possession, custody or control of the requested records, they shall produce by March 31, 2017, affidavits supporting their claim. The affidavits shall identify the present location and custodian of the requested records and shall include sufficient identifying information for a party to subpoena the records; and

it is further

ORDERED defendants' request to bar or limit the testimony of Drs. Lebwohl and Lagana is DENIED without prejudice to defendants' right to re-file their application if the requested records are not produced or made available for inspection. Defendants' application may not be filed without leave of Court.

                                      s/Joel Schneider
                                      JOEL SCHNEIDER
                                      United States Magistrate Judge