Exhibit A

1

1  **UNITED STATES DISTRICT COURT**
2  **FOR THE DISTRICT OF NEW JERSEY**

3  _____

4  IN RE:  BENICAR (OLMESARTAN)
   PRODUCTS LIABILITY LITIGATION

5                          CIVIL ACTION NUMBER:

6                            15-2606
   _____

7      Mitchell H. Cohen United States Courthouse
       One John F. Gerry Plaza
8      Camden, New Jersey 08101
       January 25, 2017

9  B E F O R E:     THE HONORABLE ROBERT B. KUGLER
                    UNITED STATES DISTRICT JUDGE
10                UNITED STATES MAGISTRATE JUDGE JOEL SCHNEIDER

11 A P P E A R A N C E S:

12 ADAM SLATER, ESQUIRE
   ATTORNEY FOR PLAINTIFFS
13
   RICHARD GOLOMB, ESQUIRE
14 ATTORNEY FOR PLAINTIFFS

15 STEVEN RESNIK, ESQUIRE
   ATTORNEY FOR PLAINTIFFS
16
   RAYNA KESSLER, ESQUIRE
17 ATTORNEY FOR PLAINTIFFS

18 SUSAN M. SHARKO, ESQUIRE
   ATTORNEY FOR DEFENDANTS
19 MICHAEL C. ZOGBY, ESQUIRE
   ATTORNEY FOR DEFENDANTS
20
   KENNETH A. MURPHY, ESQUIRE
21 ATTORNEY FOR DEFENDANTS

22

23

24

25

2

1 | JESSICA BRENNAN, ESQUIRE
ATTORNEY FOR DEFENDANTS

2 |

AMY KLUG, ESQUIRE
3 | ATTORNEY FOR DEFENDANTS

4 |

5 |

6 |

7 |

Certified as true and correct as required by Title 28,
8 | U.S.C., Section 753.

/S/ Carl J. Nami
9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

*United States District Court*
*Camden, New Jersey*

1                (open court)

2           THE DEPUTY COURT CLERK:  All rise.

3           THE COURT:  Thanks.  Have a seat.  All right.   Good

4  afternoon.  How is everybody?

00:20    5        All right.  Have a seat.  Relax.  Where is our man from

6  New Orleans?

7           MR. SLATER:  He said he had enough of these

8  conferences because nothing ever happens.

9           THE COURT:  Since he's not here, we're going to

00:20   10  appoint him to something that he's not going to like.  How

11  about that?

12           MR. SLATER:  I think that, that -- he should be on

13  the lunch committee.  He had this deposition and he said he

14  couldn't get out of it.

00:21   15           THE COURT:  That's fine.  No big deal.  All right.

16  Welcome back, everybody.  Just one preliminary thing I want to

17  bring to everybody's attention.  Defense counsel already knows

18  this.  We are trying a to construct, for lack of a better

19  term, a spread sheet for the court so we can keep track of all

00:21   20  this stuff, and one data point that we don't have, so we've

21  asked defense counsel if they could help us with this.  We

22  want to put in our spread sheet a very general description of

23  the injuries being claimed by each of the separate plaintiffs.

24  So, they've offered to give us just a very short description

00:21   25  of the plaintiffs' injuries so we can put it in those spread

*United States District Court*
*Camden, New Jersey*

1  sheets so we can track of who's doing what.  Okay?

2          MR. SLATER:  Just for the Bell Weather cases?

3          THE COURT:  No.  It's going to be --

4          MR. SLATER:  Cross litigation?

00:22  5          MS. SHARKO:  And that will come from the PFS, not

6  from medical records.

7          THE COURT:  Right, it comes from the PFS.  We don't

8  have access to the PFS.  I'm not asking that we have access to

9  the PFS.

00:22  10          MR. SLATER:  We can have them delivered in hard copy.

11          THE COURT:  Well, thank you.  That I don't need at

12  this point.

13      All right, I have your proposed agenda.  I have a

14  number of complaints in the Federal and State litigation.  We

00:22  15  have first time listing on page one, paragraph three.  That's

16  still on?

17          MS. SHARKO:  Yes.  No changes there.

18          THE COURT:  Okay.  The second time listing there's

19  two of them listed?

00:22  20          MS. SHARKO:  Yes.  No changes.  They should be

21  allotted to Orders to Show Cause.

22          MR. GOLOMB:  Your Honor, on the Mason case.  That's

23  my case.

24          THE COURT:  Yes.

00:22  25          MR. GOLOMB:  And we're asking for another 30 days

1  there.  Mason does not recall the name of his physician but

2  remembers the clinic that he went to and that clinic is closed

3  down.  So we're trying to identify where they forwarded the

4  records to and we just request another 30 days before this

00:23  5  Order.

6          THE COURT:  Well, you're going to get the 30 days

7  because that's how long it's going to take for the Order to

8  Show Cause to be returnable anyway, and then if you have more

9  information, then at the next status conference I want you to

00:23  10  tell me about it.

11          MR. GOLOMB:  Okay.

12          THE COURT:  So that we don't dismiss it.  I'll listen

13  to you then.

14          MR. GOLOMB:  Okay.

00:23  15          THE COURT:  Then we'll see what happens.

16          MR. GOLOMB:  Okay.  Thank you.

17          THE COURT:  Paragraph four, overdue fact sheets,

18  first time listing.

19          MS. SHARKO:  We are down to 37.

00:23  20          THE COURT:  Down to 37.

21          MS. SHARKO:  So number four Branch.

22          THE COURT:  Is out?

23          MS. SHARKO:  That comes off the list.  Number nine,

24  Curiton.  C-u-r-i-t-o-n, is off.  They served a PFS yesterday.

00:24  25          Number 24, Moore is off.  They served a PFS yesterday.

*6*

1          Number 26, Plater.  P-l-a-t-e-r, is off.  They served a

2    PFS yesterday.

3          Number 28, Rhymes as in nursery.  They're off.  They

4    served a PFS yesterday.

00:24     5          Number 40, Wells is off.  They served the PFS

6    yesterday.  And number 41, Westbrook, is off.  They served a

7    PFS yesterday.

8          MR. GOLOMB:  Your Honor, number 27 should come off as

9    well.  That's Roland.  We've already filed a stipulation of

00:24     10   dismissal.

11          THE COURT:  Okay.

12          MS. SHARKO:  I don't know one way or the other, but

13   we'll watch for it.

14          THE COURT:  We'll obviously take counsel's word for

00:25     15   it.  Well, you know, at this rate I think we calculated with

16   these stipulations of dismissal it will be 2037 we'll have all

17   these cases dismissed?  Justice at work.

18          All right, second time listing.

19          MS. SHARKO:  Second time listed all nine cases are

00:25     20   still deficient and should go on to an Order to Show Cause,

21   please.

22          MR. SLATER:  One second, Your Honor.  Case four on

23   that list, Hoker.  I've been asked by counsel from Wagstaff

24   and Carmel to make an application to the court for a 90 day

00:25     25   extension.  The plaintiff died recently.  So the court -- so

1  they asked for an extension to have time for the family to

2  have a representative appointed et cetera and to take care of

3  all that and apparently from the defense would not consent to

4  an extension.  So, we're asking the Court if we could have an

00:25  5  extension for someone who just died.

6         MS. SHARKO:  And so here's our position.  We got that

7  request yesterday.  This case was filed on June 30th of last

8  year.  It was served on July 8th.  The PFS was due on

9  October 6th.  We got nothing.  An overdue letter was sent on

00:26  10  October 14th.  We got nothing.  It was listed on the November

11  agenda as a first timer.  We got nothing.  And then now it's a

12  second time.  Apparently according to out internet research,

13  the man died in December.  So, our sympathies to the family,

14  but we have nothing on this case at all.

00:26  15         THE COURT:  We're going to list it again on the

16  second listing.  So that we'll give them another 30 days and I

17  want a report.

18         MS. SHARKO:  Okay.

19         THE COURT:  As to what steps have been taken to

00:26  20  substitute an Estate, if any, if they still want to continue.

21         MR. SLATER:  To make sure they're actively doing it.

22         THE COURT:  Yes.  Okay?

23         MR. SLATER:  Okay.  I know they do intend to and they

24  actually I can tell you, they told me that a PFS was basically

00:26  25  filled out.  They just don't know whether to sign it right now

*8*

1    because they don't have a rep.  Thank you, Judge.

2              THE COURT:  You got some more time.

3              MR. SLATER:  Okay.

4              MS. SHARKO:  We, frankly, would be more sympathetic

00:26    5    if we had a PFS that at least showed there was information

6    there I guess that it takes a while to get an Estate in place.

7              THE COURT:  All right.  It takes a little while.

8    We'll see.

9              MS. SHARKO:  Okay.

00:27   10              THE COURT:  Mr. Golomb.

11              MR. GOLOMB:  Two cases on that list, Your Honor,

12    Ballard, we have a similar situation.  Mr. Ballard recently

13    passed away and we're working with the surviving spouse to

14    complete the fact sheet.

00:27   15              THE COURT:  That's number one on the list.  Correct?

16              MR. GOLOMB:  Yeah.

17              MS. SHARKO:  That's totally new to us.  That case has

18    now been around for several months.  We have no information on

19    it.  I have no idea what the date of death is.

00:27   20              THE COURT:  We'll give it another second listing.

21              MR. GOLOMB:  And on Vickie Gains, we've already filed

22    a stipulation of dismissal on that.

23              THE COURT:  Okay.

24              MS. SHARKO:  Okay.  We look forward to seeing that.

00:27   25                        (Brief pause)

9

1          THE COURT:  Paragraph six, page 10.  Two cases

2     listed.

3          MS SHARKO:  Yes, sir.  So these are case where when

4     you read the PFS, the injuries that are alleged come before

00:28    5     Benicar use, not after.  And we've raised that question with

6     plaintiffs.  We've gotten no response, and we submit that

7     those cases should be dismissed because usually it has to be

8     taken within the then happened event.

9          THE COURT:  Usually.  What are we doing with these

00:28   10     two?

11          MR. SLATER:  You know, our position is that, and

12     obviously I don't have the medical records in front of me, but

13     I think counsel is essentially looking for a expedited way to

14     get Summary Judgment on a case.  I think if when the time

00:28   15     comes, they can deal with it, but I don't have the medical

16     facts in front of me.  Maybe the person with gastrointestinal

17     issues before and their experts are going to say, well, that

18     was related to one thing and then the Olmesartan caused issues

19     when they went on the drug, that's different and it would have

00:28   20     been more severe or if this wouldn't have happened.  I mean

21     that's all in the realm of very possible.  I don't have the

22     records to say I know the answer.  But for them to pick out

23     records and say they've analyzed it so the plaintiff has to

24     prove their case at this point when it's not even a Bell

00:29   25     Weather case.  I think it's not an issue for us to be doing

*United States District Court*
*Camden, New Jersey*

*10*

1    that now.

2         THE COURT:  Well, we're going to deal with that issue

3    by picking off the strategy in a few seconds.  But I think

4    when there's a specific request from defense counsel alerting

5    the plaintiffs that there is a specific problem, I think I

6    need a little bit better response than that.  Whoever

7    represents these two people should be at least on the phone

8    with Miss Sharko saying, well, this is what we think is going

9    on here.

10        MR. SLATER:  Okay.

11        THE COURT:  Try to resolve this because if this is

12   true, then Rule 11 would seem to indicate they shouldn't be

13   continuing in these cases.

14        MR. SLATER:  I'll talk to -- well, I know one is Mr.

15   Golomb's.  So I certainly think that I can hand that off to

16   him and on the other firm I'll talk to the other law firm and

17   tell them they need to provide an explanation for why they

18   think the case is a valid case.

19        THE COURT:  Right.

20        MR. SLATER:  Okay.

21        MS. SHARKO:  We appreciate that.  We sent letters out

22   in mid November.

23        THE COURT:  Maybe Mr. Golomb can give us an answer on

24   the Hiddleston case.

25        MR. GOLOMB:  I can, Your Honor.  They're wrong on the

1    facts, but with that said, we're dismissing the case for other

2    reasons.

3              THE COURT:  You're going to file a stipulation?

4              MR. GOLOMB:  Yes.

00:30     5              THE COURT:  Okay.  So get a response from Matthews

6    and Associates to Miss Sharko, please, on that issue and open

7    up some line of communication with Miss Sharko on this case.

8              MR. SLATER:  Yes, I will.

9              THE COURT:  Thank you.  All right, now we get to

00:30    10    number seven which is the 82 cases which is now 80 cases?

11             MS. SHARKO:  Right.  Actually since we sent the

12    letter to Your Honor, we've heard from eight plaintiffs.  Two

13    took dismissals with prejudice as a result of the letter I

14    guess confirming we were right and six of the plaintiffs sent

00:31    15    records documenting an event and a prescription.  So they

16    would come off the list and we heard nothing from anyone else.

17    I think the fact at least six people served records, shows

18    that plaintiffs are holding records and not updating their

19    PFS's.  So we would ask that that be done.

00:31    20             THE COURT:  Well, really it shows that you,

21    plaintiff's counsel, if they have such records, were deficient

22    in providing them to you.  This is a problem with these

23    stragglers.  We will put into place an efficient method to

24    dispose of the stragglers without you having to file summary

00:31    25    judgment in each and every one.  So you're not going to handle

*12*

1  80 or a hundred summary judgment motions on these kind of

2  cases.  But I don't think this is the appropriate time to do

3  it.  I promise you we will get to that and you'll have a

4  method by which to get rid of these cases.  I want to focus

00:32  5  really more, all of your energies on the experts in getting

6  that lined up for Daubert Hearings at this point.  Okay?

7       MS. SHARKO:  Okay.

8       THE COURT:  All right, that's paragraph eight which

9  is the defendant served its list of experts.

00:32  10       MS. SHARKO:  We do and we have one addition to make

11  to that.  I was told this morning that there's one additional

12  regulatory expert Dr. Feigal, F-e-i-g-a-l.  And his deposition

13  date has already been set some weeks ago.  It was on a letter

14  to plaintiffs and it was -- we didn't have it when we sent

00:32  15  this letter.  So we apologize but that's -- he should have

16  been on the list to Mr. Slater and to the court yesterday

17  afternoon.

18       MR. SLATER:  I don't know what, what -- we didn't

19  accept any of the dates yet.  So I'm not sure what date he's

00:33  20  on for, but we can sort that out and you can let us know.  We

21  certainly still have a significant issue here from our

22  perspective, Judge.

23       THE COURT:  We're going to deal with it right now.

24  We'll talk about it right now.

00:33  25       MR. SLATER:  Okay.

*United States District Court*
*Camden, New Jersey*

*13*

```
 1          THE COURT:  All these experts out there, that the
 2     plaintiff had a significant number of experts and the
 3     defendants have an extraordinary number of experts at this
 4     point.
 5          Let me take you back to November 30th, and November
 6     30th we had a conference, phone conference and at that point
 7     we were discussing, Mr. Slater was discussing the experts and
 8     I stated to you all on the phone, well, of course, recognized
 9     there's just no chance that you're going to be able to put 21
10     experts on the stand during the trial.  And perhaps I was
11     being too subtle, although I'm not usually accused of being
12     too subtle.  Folks, we are not going to entertain testimony
13     from 50 experts and I'm not going to hear 50 Daubert motions
14     regarding experts.  It just isn't going to happen, and the
15     jury is never going to hear this number of experts.  It's
16     wasting time.  So we're going to pare this down, and the first
17     way we're going to pare this down is I want to concentrate,
18     focus back to where I've always been since the beginning of
19     the case.  I want to focus first on the general causation
20     experts.  Let's focus and get this done.  Let's get the
21     Daubert hearings done on them first.  And, perhaps, I should
22     have been clearer about that two months ago, but -- and that's
23     my fault and I'm sorry.  But we can still fix this problem.
24     But I -- there are, as I count them now, 13 or 14 defense
25     general liability experts and the best I can tell from the
```

00:33 (line 5)
00:34 (line 10)
00:34 (line 15)
00:34 (line 20)
00:35 (line 25)

*14*

1  plaintiffs there are six.  Correct?

2         MR. SLATER:  That's correct, Your Honor.

3         THE COURT:  Correct?

4         MS. SHARKO:  Yes.

00:35  5         THE COURT:  All right.

6         MS. SHARKO:  But.

7         THE COURT:  But?

8         MS. SHARKO:  We have no intention of calling all of

9  these experts in every case should we get to trial, but we're

00:35  10  mindful of the fact that we have ten plaintiffs and we have

11  general and specific causation as to each of those ten

12  plaintiffs.  And so we didn't want to be in a position where

13  we identify one expert and then he or she is not available for

14  whatever reason when trial is set.  So, number one, we don't

00:35  15  intend to call all those experts in any one trial.  We know

16  that you would never let us do that.

17         The second thing is that Daubert and general causation

18  and specific causation cover a wide range of areas.  And so we

19  need people in all these different areas to address those

00:36  20  areas.  And the third issue is simply one of scheduling.  We

21  don't know when the Daubert hearings are going to be.  And,

22  so, yes, we have a couple epidemiology experts.

23         THE COURT:  Four.  You have four.

24         MS. SHARKO:  Right.

00:36  25         THE COURT:  I suggest you don't need four.

MS. SHARKO:  If we knew when the hearings were going to be, we could narrow that group.  If we knew when the hearings were going to be and there was an agreement that if the cases were tried, we could use any of those four.  We'd be willing to narrow it to two.

Part of our concern is looking down the road at the big picture and making sure that we're not foreclosed.

THE COUR:  Explain to me how the date of the hearing determines the number of experts that you're going to use.

MS. SHARKO:  Okay.  So, why, why did we name four.  Because we're looking at these experts as trial experts in addition to the Daubert Hearings and then if you said no we could only have two, we need to make sure that those two, at least one of them is available to testify live at the Daubert Hearing.

MAGISTRATE JUDGE SCHNEIDER:  So do you anticipate at the Daubert Hearing separate rulings have to be made as to each of the four epidemiologists?

MS. SHARKO:  It depends on what plaintiffs' challenges are, and really if this is premature in the sense that they should see the reports.  Another way to narrow this and I've been thinking about this because I'm sensitive to the issues you raised, if we have ten cases, we're not sure about all the dispositive motions we're going to make, but we know that we're going to make statute of limitations motions in

1 two cases.  If we took those two cases off this list and

2 deferred discovery, expert discovery on that, that would get

3 rid of a number of experts for both sides.

4        THE COURT:  I don't think it's going to have a

00:38   5 significant impact on the number of experts on both sides.  If

6 you focus on general liability, general causation, does

7 Olmesartan cause spruelike enteropathy, et cetera, et cetera

8 and all the other maladies.  Which of these experts are going

9 to say yes or no?

00:38   10        MS. SHARKO:  Well, Mr. Parker will answer that

11 specifically as to the experts.  But I don't think we can or

12 should address General Causation in a vacuum.  I think we

13 should be doing general and specific causation in the context

14 of the specific cases.

00:38   15        THE COURT:  Why not in a vacuum?  That's the full

16 genesis of this case was that the plaintiffs felt that

17 olmesartan causes these conditions and that's how they start

18 and the manufacturer said no it doesn't.  Until we get an

19 answer to that question, where do we go?

00:39   20        MS. SHARKO:  Well, the question really is do the

21 plaintiffs' expert's opinion -- are the plaintiffs' expert

22 opinions as to General Causation supported by sound scientific

23 evidence.

24        THE COURT:  Right.

00:39   25        MS. SHARKO:  And we think that should be examined in

*United States District Court*
*Camden, New Jersey*

1    conjunction with a specific case.

2        THE COURT:  How does it help me to examine it in

3    conjunction with a specific plaintiff in a specific

4    plaintiff's complaints of injury?

5        MS. SHARKO:  Because if you don't, you're, you're

6    adjudicating a question in a vacuum.  It's an issue that's not

7    anchored in the facts of one specific case.

8        THE COURT:  It's anchored in the facts in every one

9    of these 2000 cases.  Every one of these 2000 cases is

10    dependent on the answer to that first question.  If the answer

11    is no, that's it.  If the answer is yes, then they got to

12    prove what their injuries are period.  That's all it is.

13        So, I mean I know you've stated this before about the

14    vacuum, but in essence it is a vacuum because of the way the

15    case is framed and the way the case was filed and the reason

16    it's here.  That the plaintiffs want an opportunity to prove

17    what in effect is new science.  And, you know, Daubert sets

18    out how you do that.  It's not an easy thing to do, but it's

19    doable under Daubert.  And it seems to me that we're wasting a

20    lot -- not wasting, but we're spending an awfully lot of time

21    and effort and expense on both sides on everything else

22    without attacking that crucial question yes or no.

23        MS. SHARKO:  I think we are, and we're armed and

24    ready to attack that, plus the specific causation in a given

25    case.  We have ten cases on both sides rolled up and ready to

00:39
00:40
00:40
00:40
00:41

*18*

1    go as of January 31st when we serve our expert reports.   To

2    save time we could take out the two statute of limitations

3    cases.   That would give us eight cases, or Your Honor could

4    randomly pick five of the ten.   I think it should be random.

00:41    5    And then that would cut the number of experts down.   But we

6    believe that we should address specific and general causation

7    simultaneously.

8            THE COURT:   Mr. Slater?   Mr. Golomb?

9            MR. SLATER:   Well, obviously you know our position

00:42    10   which is they need to drastically cut the number of experts.

11   I mean --

12           THE COURT:   We're going to do that.

13           MR. SLATER:   Okay.   So -- and I think Your Honor's

14   going to need information of what some of these people are

00:42    15   actually generally going to say and I think that's obvious to

16   the court.

17            As far as cutting cases, I've never heard that until

18   right now.   So, I'd have to, I'd have to know what they're

19   talking about in terms of which cases, why, what the benefit

00:42    20   -- what's the procedure later and I'd have to talk to a few

21   other people.   I didn't want unilaterally to make that call

22   for other people who have a lot vested in this litigation and

23   not that I'm afraid to make a decision but I think it's the

24   appropriate thing to do.   And I don't even know if the court

00:42    25   is inclined to do that.   If Your Honor is, I can speak to

*United States District Court*
*Camden, New Jersey*

19

1   people, we can talk about it.  But, you know, I'm in full

2   agreement with the court that we should be focusing on what do

3   we need to put together to prove yes or no that the drug

4   causes this issue.  And that's really the primary question.

00:42   5   And we've said, I've been in front of you many times saying I

6   don't think when push comes to shove that they are going to

7   oppose general causation.  We'll see what happens with these

8   reports and these depositions.  I don't know, frankly, how

9   they can do it when every scientific article in the literature

00:43   10   says it does.  So I don't know how they oppose it under

11   Daubert.  I mean, frankly, they are going to put us to our

12   test and whoever does testify, I would expect we're going to

13   have motions back at them for having to give opinions without

14   being rooted in the actual peer review literatures.  I mean

00:43   15   there are some issues on the general causation that will keep

16   the court quite busy and keep us busy anyway at the core of

17   what the case is.  So I think we have to stick to where we

18   were which is they need to drastically cut down and we have to

19   figure out who really needs to be deposed and which experts

00:43   20   really need to be in the case at this stage.  If the court has

21   any inclination to discuss paring the cases, I think we have

22   to really understand what the court's inclined to do, what's

23   being offered.  How does it happen so I can talk with my team

24   and give you a reason to respond to that.  It's not just my

00:43   25   view but allows others that have an important investment in

1    this also to say something.

2            THE COURT:  Well paring the cases, Miss Sharko says

3    there's two of the ten in the statute of limitations issues.

4    I mean that's rather straightforward.

5            MR. SLATER:  And I don't know which cases those are.

6            THE COURT:  Well, I don't either, but that was the

7    point I wanted to make is that that may be something that the

8    plaintiffs should discuss with Miss Sharko as to those two

9    cases, and if she's right, then what's the point?

10           MR. SLATER:  If she'll tell us which those are, we'll

11   take a look at them.

12           THE COURT:  I think you really ought to have a sit

13   down, both sides as to those two cases because she even needs

14   to file those kinds of motions I mean.

15           MR. SLATER:  I understand that.

16           THE COURT:  Those kinds of cases have been on a long

17   time.

18           MAGISTRATE JUDGE SCHNEIDER:  I thought the question,

19   Mr. Slater, was whether in the first instance you want to go

20   to a Daubert trial on general causation or as Mr. Sharko is

21   suggesting, general and specific causation.

22           MR. SLATER:  Okay.  Well, on that issue, Your Honor,

23   when Judge Kugler raised that on that at that conference, we

24   think it makes absolute sense to have a trial on a single

25   issue first because then the efficiency going forward is

00:44

00:44

00:44

00:44

00:45

*21*

1    compounded.  I mean at that point if we prevail on that, these

2    experts aren't coming in.  You don't have to bring in an

3    epidemiologist.  You don't -- even if they're needed, which is

4    -- you know, we'll see what happens.  We were very careful to

00:45    5    make sure we covered our bases, so we win the basketball game

6    against our epidemiologists.  But they're good players.  But,

7    no, absolutely that from our perspective makes perfect sense

8    to focus on getting to a trial in general causation first

9    because for reasons the court has identified.  Absolutely,

00:45    10   we're all for that and I think it makes a lot of sense and

11   we're willing to try that, that case whenever the court tells

12   us to.

13           MS. SHARKO:  And we are opposed to that.  We think

14   that's a very significant due process.  We're trying one issue

00:45    15   in a vacuum.

16           THE COURT:  Well, it's been done.  It's been affirmed

17   by the Court of Appeals, and I'm strongly leaning in that

18   direction, but before we get there.  Let's talk about the

19   experts.  I want to focus on the first tranche of these

00:46    20   motions are going to be directed to the general liability

21   experts.  Each side is going to pick five general liability

22   experts.  Five.  That's all you're going to have on your

23   liability.

24           MR. SLATER:  Do you mean on causation?

00:46    25           THE COURT:  General causation.

22

1    MR. SLATER:  Okay.  I'm sorry.

2    THE COURT:  I'm sorry.  That's correct.  Need to be

3  more specific.  And your Daubert motions are going to be

4  directed at the five that your advisory has served on you.  So

5  you're going to need to identify, Miss Sharko, when you serve

6  those reports next week.  Right?

7    MS. SHARKO:  Yes, sir.

8    THE COURT:  Which five you're going to be relying for

9  general causation.  You're going to have to notify her by the

10  end of that date the five that you're going to be relying on

11  for general causation.  Okay?  So, by next week we're going to

12  have ten experts going, there's going to be ten reports done,

13  take the ten depositions, file the motions immediately, and

14  we'll hear those immediately, and then we'll back fill in the

15  specific causation experts after that.  Let's get these done

16  first.  It's lot of work.  I want to focus on getting it done

17  because that to me has always been the key of this case.

18    MS. SHARKO:  Judge, we have experts in six different

19  areas.

20    THE COURT:  I know.  So do they.

21    MS. SHARKO:  They have experts in five areas and we

22  would really need --

23    THE COURT:  Which area is additional for you that

24  they don't have?  Why do you need an expert to testify in an

25  area they're not raising?

*United States District Court*
*Camden, New Jersey*

23

|     |     |
| --- | --- |
|     | 1 |

MS. SHARKO:  Because we believe that each of the

2  areas we have are important to the determination of the issue

3  of General Causation.  So we have pharmaco-vigilance.

4          THE COURT:  Right.

00:47   5          MS. SHARKO:  And they don't have anybody broken out

6  separately as to pharmaco-vigilance.  So we would ask for six

7  on the variance, otherwise we have no one to speak to an area.

8          THE COURT:  It's an area that they haven't raised.

9          MS. SHARKO:  They have.

00:48   10         THE COURT:  How have they raised the

11  pharamco-vigilance?

12         MS. SHARKO:  They have pharamco-vigilance addressed

13  by their regulatory people and by their epidemiologists, and I

14  think by their GI person and we have people who have specific

00:48   15  expertise in each of these six areas.  And so if we cut out,

16  if we're forced to cut out one of these and that's an area,

17  that's a gap for us.

18         THE COURT:  I just don't remember -- I've read their

19  expert reports a long time ago.  I just don't remember that

00:48   20  specific part of them.

21         MS. SHARKO:  So they have two GI doctors.  We have

22  three.  They have one pathologist.  We have one general

23  pathologist.  They have one regulatory.  We have two

24  regulatories.  They have one toxicologist.  We have two

00:49   25  toxicologists.  And then they have one epidemiologist and we

24

1   have four.  And then we have two people whose specific area of

2   expertise is pharmaco-vigilance.  They absolutely raised

3   pharamco-vigilance.  That's one of the key issues in the case

4   as Judge Schneider has told us over and over.  But they

00:49   5   addressed pharmaco-vigilance but by having multiple of their

6   experts talk about it and we broke it out and got people whose

7   specific area of expertise that was to address that.  So we

8   would ask permission to have one of those.

9       THE COURT:  All right.  Mr. Slater, anything you want

00:49   10  to say?

11      MR. SLATER:  Yeah.  What I would say is I think,

12  look, whether it's five experts or six experts, we have a

13  total of six experts.  So when you made your ruling on five, I

14  just looked at the list and said we're going to have to drop

00:50   15  somebody at this stage and sucked it up and said okay, big

16  deal.

17      THE COURT:  Make it six for each side.

18      MR. SLATER:  Yeah.

19      THE COURT:  Six for each side.  There's not going to

00:50   20  be that much more work.

21      MR. SLATER:  We'll go either way.

22      THE COURT:  Six on each side.  So you don't need to

23  send a letter.  You have all six.

24      MS. SHARKO:  My other question is if we could have

00:50   25  the week that we're going to have the Daubert Hearing because

25

1  I think we will at least request live testimony so we can make

2  sure that the people we pick are available that week?

3         THE COURT:  You know they don't have to be here to

4  testify live.

5         MS. SHARKO:  I understand that.

6         THE COURT:  Okay.  Well let's work then from you're

7  serving those reports next week.  Then depositions you have I

8  assume -- well, I shouldn't assume because plaintiffs haven't

9  seen the defense experts, but assuming the plaintiff wants to

10 depose all six.

11        MR. GOLOMB:  Right.

12        THE COURT:  You have 12 depositions to take.  How

13 long is this going to take you in February?

14        MS. SHARKO:  We took Judge Schneider at his word.

15 That it had to be done in -- by February 28th or we would all

16 die and every one of the experts --

17        THE COURT:  I'm suggesting you don't need that long

18 because you only have 12 now.

19        MS. SHARKO:  No.  But, but every one of the experts

20 has dates that have been offered.  So we have dates set for

21 all --

22        THE COURT:  Okay.

23        MS. SHARKO:  -- of our 40 or how ever many and we

24 have dates from the plaintiffs for all of theirs.  So to avoid

25 chaos, my request is that we keep the dates that we have.

00:50

00:51

00:51

00:51

00:51

*26*

|       |    |                                                              |
|-------|----|--------------------------------------------------------------|
|       | 1  | MR. SLATER:  I would say I know that one -- I, I              |
|       | 2  | think that it makes sense for us to use the month of February |
|       | 3  | to do the 12 depositions, right.  And we just now that with  |
|       | 4  | this ruling I assume the defense is going to come back to us  |
| 00:51 | 5  | and tell us which are in and then we can -- we'll know -- then |
|       | 6  | we'll get those dates.  We'll know which ones are really in   |
|       | 7  | and we'll say yes or no real quick.                           |
|       | 8  | THE COURT:  When they serve their reports, they're           |
|       | 9  | going to tell you the six they're going to rely on.          |
| 00:52 | 10 | MR. SLATER:  Whenever they tell us that, we'll say,          |
|       | 11 | you know if there's a real -- we're going to try to obviously |
|       | 12 | work with the dates.  If there's a major issue, we'll tell   |
|       | 13 | them.  I doubt it will happen.  I mean, I understand the      |
|       | 14 | Court's view on that.  So -- but it obviously greatly         |
| 00:52 | 15 | simplifies the amount of work we have to do on the briefing   |
|       | 16 | because now it's 12 experts instead of across the board.  So  |
|       | 17 | -- but I don't know how Miss Sharko feels about it.  I'm fine |
|       | 18 | with doing the depositions in February and serving the briefs |
|       | 19 | the end of March.  If we want to pull the date back a little  |
| 00:52 | 20 | bit because it's only 12 experts, that's fine, too.  I, I --  |
|       | 21 | if Your Honor thinks that we don't need as much time, we could |
|       | 22 | probably start writing the briefs now anyway.  There's not a  |
|       | 23 | lot of secrets to what the standard is.  It's going to be dep |
|       | 24 | quotes out of a deposition.                                   |
| 00:52 | 25 | THE COURT:  We all know what the law is.                     |

*27*

1        MR. SLATER:  Yup.

2        THE COURT:  We've all been down this road a few

3 times.  Well, Miss Sharko, then when are you going to have

4 your motions filed?  Do you need as much time as we had

00:52    5 previously or can you do it faster?

6        MS. SHARKO:  We need as much time as we had

7 previously because we've been relying on that date, number

8 one.  Number two, we're doing it jointly with New Jersey.

9        THE COURT:  Okay.

00:53   10        MS. SHARKO:  And some of the depositions in New

11 Jersey are staggered.  So we're doing two sets of briefs and

12 we would ask March 31 for the briefs and then we propose a

13 schedule back from there, March 31 for motions, April 21,

14 opposition, May 1, reply and the week of May 15 for hearings.

00:53   15 That's our proposal.

16        THE COURT:  Okay.

17        MAGISTRATE JUDGE SCHNEIDER:  What's the reply date?

18        THE COURT:  May 1st.

19        MS. SHARKO:  May 1st.

00:53   20        THE COURT:  And that's fine.  I assume that's okay

21 with the plaintiffs, those dates?

22        MR. SLATER:  I think now that we know what we know

23 what the motions are really and I think those dates work fine.

24 Just to clarify one fine point.  The general experts are the

00:53   25 same for both litigations.  So there's not going to be any

1    depositions beyond February because there's no --

2            THE COURT:  Not as to general liability.

3            MR. SLATER:  Right.  The general ex -- yeah, the

4    general experts will be deposed in February.  There's no more

00:54    5    depositions in March.

6            MS. SHARKO:  You're right.

7            MR. SLATER:  Right?

8            MS. SHARKO:  Yeah, you want that on the record.  I

9    said you were right.

00:54    10            MR. SLATER:  Yeah, that's okay.

11            THE COURT:  Hallelujah.  We made progress.

12            MR. SLATER:  You know, Judge, I play chess.  I've

13   been moving the chess board for two years to get to that.

14            THE COURT:  Why don't you play baseball.

00:54    15            MR. GOLOMB:  That was me.

16            MR. SLATER:  Look at that.  Yes, so that's -- so the

17   schedule on that works fine.

18            THE COURT:  Okay.

19            MR. SLATER:  I don't know about the hearing date.

00:54    20   That's up to the Court.  We can work on that, but the schedule

21   for briefing is fine.  Sorry, Carl.

22            THE COURT:  Okay.  All right.  We have 46 briefs to

23   read and in advance of these.  All right.  Well, we can do it

24   in the middle of that.

00:54    25            MR. SLATER:  Do you want to impose page limits on the

29

1     size and the opposition?

2              MS. SHARKO:  I think the Rule fits.

3              THE COURT:  Yeah.

4              MR. SLATER:  Okay, just trying to make it simpler.

00:55    5     THE COURT:  You don't have to repeat the boiler plate

6     legal argument to each and every one of these motions.  Okay?

7     These are fact specific.  I mean clearly and I think I've

8     hinted at this here and elsewhere, in this kind of a case it

9     seems to me that the qualifications are not going to be an

00:55    10    issue.  It seems to me the fit is not going to be the issue,

11    the methodology is going to be the issue.  So let's focus on

12    that.  What did they do.  How did they get to this opinion.

13    What did they rely on and why is that good science.  Do it

14    that way.  That's really what I'm interested.  So you don't

00:55    15    have to spend a lot of time in your briefs talking about

16    general law and all the Third Circuit principles and all,

17    except that it applies in that specific fact.  Okay?

18             MS. SHARKO:  Okay.

19             MAGISTRATE JUDGE SCHNEIDER:  Miss Sharko, can you

00:56    20    send me a copy of your six reports to Judge Kugler and myself

21    when you send them to the plaintiff?

22             MS. SHARKO:  Absolutely.  We're going to serve all

23    the reports and designate the six?  You want all of them with

24    a sticky on our list which ones we're going to use?

00:56    25    THE COURT:  I just want the six for now.  The six

30

1    that we're going to be dealing with.

2          MS. SHARKO:  Okay, will do.

3          THE COURT:  Okay, we'll start those hearings on

4    May 15th.  And I am permitting to you whatever time it takes

00:56   5    to put on whatever evidence you want, but, you know, don't

6    waste time.

7          MR. SLATER:  I would assume, your Honor, that in

8    advance of those hearings we'll probably be speaking to Your

9    Honor and Judge Schneider about when we get closer about what

00:56   10   we really think we need to do anyway.  Would that be a fair

11   assumption?

12         THE COURT:  Yeah.

13         MR. SLATER:  Okay.

14         THE COURT:  We'll be meeting before then, that's for

00:57   15   sure.  Okay.

16         MS. SHARKO:  In terms of the meetings, I spoke to Mr.

17   Slater before this hearing and our request is that we move the

18   February hearing into March because we're going to be focusing

19   on February depositions albeit fewer than we thought we had.

00:57   20         THE COURT:  Sure.

21         MS. SHARKO:  Okay.

22         THE COURT:  So when in March do you want to do this?

23         MS. SHARKO:  Any day of the week of March 5th is fine

24   for us.

00:57   25         THE COURT:  Well, you want to keep it on a Wednesday

31

1   the eighth, the afternoon of the eighth of March?  You want to
2   do that?
3           MR. SLATER:  Sure.
4           MS. SHARKO:  Okay.  Thank you.
00:57   5           THE COURT:  All right, March 8th at 2:00 p.m.?
6           MS. SHARKO:  Okay.
7           THE COURT:  And obviously if you need a conference
8   before that, we can get you on the phone.  All right.
9           Any other issues we want to talk about today?
00:58  10           MR. SLATER:  I think we've covered everything, Your
11  Honor.
12                       (Brief pause)
13           THE COURT:  All right.  Thank you, everybody.
14           MR. GOLOMB:  Thank you, Your Honor.
00:58  15           MS. SHARKO:  Thank you.
16           THE COURT:  Spring training is right around the
17  corner.
18           (The matter was then concluded)
19
20
21
22
23
24
25

*United States District Court*
*Camden, New Jersey*

**/**

/S [1] - 2:8

**0**

08101 [1] - 1:7

**1**

1 [1] - 27:14
10 [1] - 9:1
11 [1] - 10:12
12 [5] - 25:12, 25:18, 26:3, 26:16, 26:20
13 [1] - 13:24
14 [1] - 13:24
14th [1] - 7:10
15 [1] - 27:14
15-2606 [1] - 1:5
15th [1] - 30:4
1st [2] - 27:18, 27:19

**2**

2000 [2] - 17:9
2017 [1] - 1:8
2037 [1] - 6:16
21 [2] - 13:9, 27:13
24 [1] - 5:25
25 [1] - 1:8
26 [1] - 6:1
27 [1] - 6:8
28 [2] - 2:7, 6:3
28th [1] - 25:11
2:00 [1] - 31:5

**3**

30 [4] - 4:25, 5:4, 5:6, 7:16
30th [3] - 7:7, 13:5, 13:6
31 [2] - 27:12, 27:13
31st [1] - 18:1
37 [2] - 5:19, 5:20

**4**

40 [2] - 6:5, 25:23
41 [1] - 6:6
46 [1] - 28:22

**5**

50 [2] - 13:13
5th [1] - 30:23

**6**

6th [1] - 7:9

**7**

753 [1] - 2:8

**8**

80 [2] - 11:10, 12:1
82 [1] - 11:10
8th [2] - 7:8, 31:5

**9**

90 [1] - 6:24

**A**

able [1] - 13:9
absolute [1] - 20:24
absolutely [4] - 21:7, 21:9, 24:2, 29:22
accept [1] - 12:19
access [2] - 4:8
according [1] - 7:12
accused [1] - 13:11
ACTION [1] - 1:4
actively [1] - 7:21
actual [1] - 19:14
ADAM [1] - 1:12
addition [2] - 12:10, 15:12
additional [2] - 12:11, 22:23
address [4] - 14:19, 16:12, 18:6, 24:7
addressed [2] - 23:12, 24:5
adjudicating [1] - 17:6
advance [2] - 28:23, 30:8
advisory [1] - 22:4
affirmed [1] - 21:16
afraid [1] - 18:23
afternoon [3] - 3:4, 12:17, 31:1
agenda [2] - 4:13, 7:11

ago [3] - 12:13, 13:22, 23:19
agreement [2] - 15:3, 19:2
albeit [1] - 30:19
alerting [1] - 10:4
alleged [1] - 9:4
allotted [1] - 4:21
allows [1] - 19:25
amount [1] - 26:15
AMY [1] - 2:2
analyzed [1] - 9:23
anchored [2] - 17:7, 17:8
answer [7] - 9:22, 10:23, 16:10, 16:19, 17:10, 17:11
anticipate [1] - 15:16
anyway [4] - 5:8, 19:16, 26:22, 30:10
apologize [1] - 12:15
Appeals [1] - 21:17
application [1] - 6:24
applies [1] - 29:17
appoint [1] - 3:10
appointed [1] - 7:2
appreciate [1] - 10:21
appropriate [2] - 12:2, 18:24
April [1] - 27:13
area [7] - 22:23, 22:25, 23:7, 23:8, 23:16, 24:1, 24:7
areas [7] - 14:18, 14:19, 14:20, 22:19, 22:21, 23:2, 23:15
argument [1] - 29:6
armed [1] - 17:23
article [1] - 19:9
Associates [1] - 11:6
assume [5] - 25:8, 26:4, 27:20, 30:7
assuming [1] - 25:9
assumption [1] - 30:11
attack [1] - 17:24
attacking [1] - 17:22
attention [1] - 3:17
ATTORNEY [9] - 1:12, 1:14, 1:15, 1:17, 1:18, 1:19, 1:21, 2:1, 2:3
available [3] - 14:13, 15:14, 25:2
avoid [1] - 25:24
awfully [1] - 17:20

**B**

Ballard [2] - 8:12
baseball [1] - 28:14
bases [1] - 21:5
basketball [1] - 21:5
beginning [1] - 13:18
Bell [2] - 4:2, 9:24
benefit [1] - 18:19
BENICAR [1] - 1:3
Benicar [1] - 9:5
best [1] - 13:25
better [2] - 3:18, 10:6
beyond [1] - 28:1
big [3] - 3:15, 15:6, 24:15
bit [2] - 10:6, 26:20
board [2] - 26:16, 28:13
boiler [1] - 29:5
Branch [1] - 5:21
BRENNAN [1] - 2:1
brief [2] - 8:25, 31:12
briefing [2] - 26:15, 28:21
briefs [6] - 26:18, 26:22, 27:11, 27:12, 28:22, 29:15
bring [2] - 3:17, 21:2
broke [1] - 24:6
broken [1] - 23:5
busy [2] - 19:16

**C**

calculated [1] - 6:15
Camden [1] - 1:7
care [1] - 7:2
careful [1] - 21:4
Carl [2] - 2:8, 28:21
Carmel [1] - 6:24
case [29] - 4:22, 4:23, 6:22, 7:7, 7:14, 8:17, 9:3, 9:14, 9:24, 9:25, 10:18, 10:24, 11:1, 11:7, 13:19, 14:9, 16:16, 17:1, 17:7, 17:15, 17:25, 19:17, 19:20, 21:11, 22:17, 24:3, 29:8
cases [29] - 4:2, 6:17, 6:19, 8:11, 9:1, 9:7, 10:13, 11:10, 12:2, 12:4, 15:4, 15:23, 16:1, 16:14, 17:9, 17:25, 18:3, 18:17, 18:19, 19:21, 20:2, 20:5, 20:9,

20:13, 20:16
causation [18] - 13:19, 14:11, 14:17, 14:18, 16:6, 16:13, 17:24, 18:6, 19:7, 19:15, 20:20, 20:21, 21:8, 21:24, 21:25, 22:9, 22:11, 22:15
Causation [3] - 16:12, 16:22, 23:3
caused [1] - 9:18
causes [2] - 16:17, 19:4
certainly [2] - 10:15, 12:21
Certified [1] - 2:7
cetera [3] - 7:2, 16:7
challenges [1] - 15:20
chance [1] - 13:9
changes [2] - 4:17, 4:20
chaos [1] - 25:25
chess [2] - 28:12, 28:13
Circuit [1] - 29:16
CIVIL [1] - 1:4
claimed [1] - 3:23
clarify [1] - 27:24
clearer [1] - 13:22
clearly [1] - 29:7
CLERK [1] - 3:2
clinic [2] - 5:2
closed [1] - 5:2
closer [1] - 30:9
Cohen [1] - 1:6
coming [1] - 21:2
committee [1] - 3:13
communication [1] - 11:7
complaints [2] - 4:14, 17:4
complete [1] - 8:14
compounded [1] - 21:1
concentrate [1] - 13:17
concern [1] - 15:6
concluded [1] - 31:18
conditions [1] - 16:17
conference [5] - 5:9, 13:6, 20:23, 31:7
conferences [1] - 3:8
confirming [1] - 11:14
conjunction [2] - 17:1, 17:3
consent [1] - 7:3

construct [1] - 3:18
context [1] - 16:13
continue [1] - 7:20
continuing [1] - 10:13
copy [2] - 4:10, 29:20
core [1] - 19:16
corner [1] - 31:17
correct [6] - 2:7, 8:15, 14:1, 14:2, 14:3, 22:2
counsel [6] - 3:17, 3:21, 6:23, 9:13, 10:4, 11:21
counsel's [1] - 6:14
count [1] - 13:24
couple [1] - 14:22
COUR [1] - 15:8
course [1] - 13:8
court [12] - 3:1, 3:19, 6:24, 6:25, 12:16, 18:16, 18:24, 19:2, 19:16, 19:20, 21:9, 21:11
COURT [100] - 1:1, 3:2, 3:3, 3:9, 3:15, 4:3, 4:7, 4:11, 4:18, 4:24, 5:6, 5:12, 5:15, 5:17, 5:20, 5:22, 6:11, 6:14, 7:15, 7:19, 7:22, 8:2, 8:7, 8:10, 8:15, 8:20, 8:23, 9:1, 9:9, 10:2, 10:11, 10:19, 10:23, 11:3, 11:5, 11:9, 11:20, 12:8, 12:23, 13:1, 14:3, 14:5, 14:7, 14:23, 14:25, 16:4, 16:15, 16:24, 17:2, 17:8, 18:8, 18:12, 20:2, 20:6, 20:12, 20:16, 21:16, 21:25, 22:2, 22:8, 22:20, 22:23, 23:4, 23:8, 23:10, 23:18, 24:9, 24:17, 24:19, 24:22, 25:3, 25:6, 25:12, 25:17, 25:22, 26:8, 26:25, 27:2, 27:9, 27:16, 27:18, 27:20, 28:2, 28:11, 28:14, 28:18, 28:22, 29:3, 29:5, 29:25, 30:3, 30:12, 30:14, 30:20, 30:22, 30:25, 31:5, 31:7, 31:13, 31:16
Court [3] - 7:4, 21:17, 28:20
court's [1] - 19:22

Court's [1] - 26:14
Courthouse [1] - 1:6
cover [1] - 14:18
covered [2] - 21:5, 31:10
cross [1] - 4:4
crucial [1] - 17:22
Curiton [1] - 5:24
CURITON [1] - 5:24
cut [5] - 18:5, 18:10, 19:18, 23:15, 23:16
cutting [1] - 18:17

D

data [1] - 3:20
date [9] - 8:19, 12:13, 12:19, 15:8, 22:10, 26:19, 27:7, 27:17, 28:19
dates [9] - 12:19, 25:20, 25:24, 25:25, 26:6, 26:12, 27:21, 27:23
Daubert [14] - 12:6, 13:13, 13:21, 14:17, 14:21, 15:12, 15:14, 15:17, 17:17, 17:19, 19:11, 20:20, 22:3, 24:25
days [4] - 4:25, 5:4, 5:6, 7:16
deal [5] - 3:15, 9:15, 10:2, 12:23, 24:16
dealing [1] - 30:1
death [1] - 8:19
December [1] - 7:13
decision [1] - 18:23
defendant [1] - 12:9
DEFENDANTS [5] - 1:18, 1:19, 1:21, 2:1, 2:3
defendants [1] - 13:3
defense [3] - 3:17, 3:21, 7:3, 10:4, 13:24, 25:9, 26:4
deferred [1] - 16:2
deficient [2] - 6:20, 11:21
delivered [1] - 4:10
dep [1] - 26:23
dependent [1] - 17:10
depose [1] - 25:10
deposed [2] - 19:19, 28:4
deposition [3] - 3:13, 12:12, 26:24
depositions [10] -

19:8, 22:13, 25:7, 25:12, 26:3, 26:18, 27:10, 28:1, 28:5, 30:19
DEPUTY [1] - 3:2
description [2] - 3:22, 3:24
designate [1] - 29:23
determination [1] - 23:2
determines [1] - 15:9
die [1] - 25:16
died [3] - 6:25, 7:5, 7:13
different [3] - 9:19, 14:19, 22:18
directed [2] - 21:20, 22:4
direction [1] - 21:18
discovery [2] - 16:2
discuss [2] - 19:21, 20:8
discussing [2] - 13:7
dismiss [1] - 5:12
dismissal [3] - 6:10, 6:16, 8:22
dismissals [1] - 11:13
dismissed [2] - 6:17, 9:7
dismissing [1] - 11:1
dispose [1] - 11:24
dispositive [1] - 15:24
DISTRICT [3] - 1:1, 1:1, 1:9
doable [1] - 17:19
doctors [1] - 23:21
documenting [1] - 11:15
done [8] - 11:19, 13:20, 13:21, 21:16, 22:12, 22:15, 22:16, 25:15
doubt [1] - 26:13
down [10] - 5:3, 5:19, 5:20, 13:16, 13:17, 15:6, 18:5, 19:18, 20:13, 27:2
Dr [1] - 12:12
drastically [2] - 18:10, 19:18
drop [1] - 24:14
drug [2] - 9:19, 19:3
due [2] - 7:8, 21:14
during [1] - 13:10

E

easy [1] - 17:18
effect [1] - 17:17
efficiency [1] - 20:25
efficient [1] - 11:23
effort [1] - 17:21
eight [3] - 11:12, 12:8, 18:3
eighth [2] - 31:1
either [2] - 20:6, 24:21
elsewhere [1] - 29:8
end [2] - 22:10, 26:19
energies [1] - 12:5
enteropathy [1] - 16:7
entertain [1] - 13:12
epidemiologist [2] - 21:3, 23:25
epidemiologists [3] - 15:18, 21:6, 23:13
epidemiology [1] - 14:22
ESQUIRE [9] - 1:12, 1:13, 1:15, 1:16, 1:18, 1:19, 1:20, 2:1, 2:2
essence [1] - 17:14
essentially [1] - 9:13
Estate [2] - 7:20, 8:6
et [3] - 7:2, 16:7
event [2] - 9:8, 11:15
evidence [2] - 16:23, 30:5
ex [1] - 28:3
examine [1] - 17:2
examined [1] - 16:25
except [1] - 29:17
expect [1] - 19:12
expedited [1] - 9:13
expense [1] - 17:21
expert [7] - 12:12, 14:13, 16:2, 16:21, 18:1, 22:24, 23:19
expert's [1] - 16:21
expertise [3] - 23:15, 24:2, 24:7
experts [45] - 9:17, 12:5, 12:9, 13:1, 13:2, 13:3, 13:7, 13:10, 13:13, 13:14, 13:15, 13:20, 13:25, 14:9, 14:15, 14:22, 15:9, 15:11, 16:3, 16:5, 16:8, 16:11, 18:5, 18:10, 19:19, 21:2, 21:19, 21:21, 21:22, 22:12, 22:15, 22:18,

22:21, 24:6, 24:12, 24:13, 25:9, 25:16, 25:19, 26:16, 26:20, 27:24, 28:4
explain [1] - 15:8
explanation [1] - 10:17
extension [4] - 6:25, 7:1, 7:4, 7:5
extraordinary [1] - 13:3

F

F-e-i-g-a-l [1] - 12:12
fact [6] - 5:17, 8:14, 11:17, 14:10, 29:7, 29:17
facts [4] - 9:16, 11:1, 17:7, 17:8
fair [1] - 30:10
family [2] - 7:1, 7:13
far [1] - 18:17
faster [1] - 27:5
fault [1] - 13:23
February [8] - 25:13, 25:15, 26:2, 26:18, 28:1, 28:4, 30:18, 30:19
Federal [1] - 4:14
Feigal [1] - 12:12
felt [1] - 16:16
few [3] - 10:3, 18:20, 27:2
fewer [1] - 30:19
figure [1] - 19:19
file [4] - 11:3, 11:24, 20:14, 22:13
filed [5] - 6:9, 7:7, 8:21, 17:15, 27:4
fill [1] - 22:14
filled [1] - 7:25
fine [5] - 3:15, 26:17, 26:20, 27:20, 27:23, 27:24, 28:17, 28:21, 30:23
firm [2] - 10:16
first [12] - 4:15, 5:18, 7:11, 13:16, 13:19, 13:21, 17:10, 20:19, 20:25, 21:8, 21:19, 22:16
fit [1] - 29:10
fits [1] - 29:2
five [9] - 18:4, 21:21, 21:22, 22:4, 22:8, 22:10, 22:21, 24:12, 24:13
fix [1] - 13:23

**focus** [9] - 12:4, 13:18, 13:19, 13:20, 16:6, 21:8, 21:19, 22:16, 29:11
**focusing** [2] - 19:2, 30:18
**folks** [1] - 13:12
**FOR** [10] - 1:1, 1:12, 1:14, 1:15, 1:17, 1:18, 1:19, 1:21, 2:1, 2:3
**forced** [1] - 23:16
**foreclosed** [1] - 15:7
**forward** [2] - 8:24, 20:25
**forwarded** [1] - 5:3
**four** [10] - 5:17, 5:21, 6:22, 14:23, 14:25, 15:4, 15:10, 15:18, 24:1
**framed** [1] - 17:15
**frankly** [3] - 8:4, 19:8, 19:11
**front** [3] - 9:12, 9:16, 19:5
**full** [2] - 16:15, 19:1

**G**

**Gains** [1] - 8:21
**game** [1] - 21:5
**gap** [1] - 23:17
**gastrointestinal** [1] - 9:16
**General** [3] - 16:12, 16:22, 23:3
**general** [25] - 3:22, 13:19, 13:25, 14:11, 14:17, 16:6, 16:13, 18:6, 19:7, 19:15, 20:20, 20:21, 21:8, 21:20, 21:21, 21:25, 22:9, 22:11, 23:22, 27:24, 28:2, 28:3, 28:4, 29:16
**generally** [1] - 18:15
**genesis** [1] - 16:16
**Gerry** [1] - 1:7
**GI** [2] - 23:14, 23:21
**given** [1] - 17:24
**Golomb** [3] - 8:10, 10:23, 18:8
**GOLOMB** [13] - 1:13, 4:22, 4:25, 5:11, 5:14, 5:16, 6:8, 8:11, 8:16, 8:21, 10:25, 11:4, 25:11, 28:15, 31:14
**Golomb's** [1] - 10:15
**greatly** [1] - 26:14
**group** [1] - 15:2

**guess** [2] - 8:6, 11:14

**H**

**hallelujah** [1] - 28:11
**hand** [1] - 10:15
**handle** [1] - 11:25
**hard** [1] - 4:10
**hear** [3] - 13:13, 13:15, 22:14
**heard** [3] - 11:12, 11:16, 18:17
**hearing** [4] - 15:8, 28:19, 30:17, 30:18
**Hearing** [3] - 15:15, 15:17, 24:25
**Hearings** [2] - 12:6, 15:12
**hearings** [7] - 13:21, 14:21, 15:1, 15:3, 27:14, 30:3, 30:8
**help** [2] - 3:21, 17:2
**Hiddleston** [1] - 10:24
**hinted** [1] - 29:8
**Hoker** [1] - 6:23
**holding** [1] - 11:18
**Honor** [15] - 4:22, 6:8, 6:22, 8:11, 10:25, 11:12, 14:2, 18:3, 18:25, 20:22, 26:21, 30:7, 30:9, 31:11, 31:14
**Honor's** [1] - 18:13
**HONORABLE** [1] - 1:9
**hundred** [1] - 12:1

**I**

**idea** [1] - 8:19
**identified** [1] - 21:9
**identify** [3] - 5:3, 14:13, 22:5
**immediately** [2] - 22:13, 22:14
**impact** [1] - 16:5
**important** [2] - 19:25, 23:2
**impose** [1] - 28:25
**IN** [1] - 1:3
**inclination** [1] - 19:21
**inclined** [1] - 18:25, 19:22
**indicate** [1] - 10:12
**information** [4] - 5:9,

8:5, 8:18, 18:14
**injuries** [4] - 3:23, 3:25, 9:4, 17:12
**injury** [1] - 17:4
**instance** [1] - 20:19
**instead** [1] - 26:16
**intend** [2] - 7:23, 14:15
**intention** [1] - 14:8
**interested** [1] - 29:14
**internet** [1] - 7:12
**investment** [1] - 19:25
**issue** [15] - 9:25, 10:2, 11:6, 12:21, 14:20, 17:6, 19:4, 20:22, 20:25, 21:14, 23:2, 26:12, 29:10, 29:11
**issues** [7] - 9:17, 9:18, 15:23, 19:15, 20:3, 24:3, 31:9

**J**

**January** [2] - 1:8, 18:1
**JERSEY** [1] - 1:1
**Jersey** [3] - 1:7, 27:8, 27:11
**JESSICA** [1] - 2:1
**JOEL** [1] - 1:10
**John** [1] - 27:8
**jointly** [1] - 27:8
**Judge** [8] - 8:1, 12:22, 20:23, 24:4, 25:14, 28:12, 29:20, 30:9
**JUDGE** [6] - 1:9, 1:10, 15:16, 20:18, 27:17, 29:19
**judge** [1] - 22:18
**judgment** [2] - 11:25, 12:1
**Judgment** [1] - 9:14
**July** [1] - 7:8
**June** [1] - 7:7
**jury** [1] - 13:15
**justice** [1] - 6:17

**K**

**keep** [5] - 3:19, 19:15, 19:16, 25:25, 30:25
**KENNETH** [1] - 1:20
**KESSLER** [1] - 1:16
**key** [2] - 22:17, 24:3

**kind** [2] - 12:1, 29:8
**kinds** [2] - 20:14, 20:16
**KLUG** [1] - 2:2
**knows** [1] - 3:17
**KUGLER** [1] - 1:9
**Kugler** [2] - 20:23, 29:20

**L**

**lack** [1] - 3:18
**last** [1] - 7:7
**law** [3] - 10:16, 26:25, 29:16
**leaning** [1] - 21:17
**least** [5] - 8:5, 10:7, 11:17, 15:14, 25:1
**legal** [1] - 29:6
**letter** [6] - 7:9, 11:12, 11:13, 12:13, 12:15, 24:23
**letters** [1] - 10:21
**liability** [6] - 13:25, 16:6, 21:20, 21:21, 21:23, 28:2
**LIABILITY** [1] - 1:4
**limitations** [3] - 15:25, 18:2, 20:3
**limits** [1] - 28:25
**line** [1] - 11:7
**lined** [1] - 12:6
**list** [11] - 5:23, 6:23, 7:15, 8:11, 8:15, 11:16, 12:9, 12:16, 16:1, 24:14, 29:24
**listed** [4] - 4:19, 6:19, 7:10, 9:2
**listen** [1] - 5:12
**listing** [6] - 4:15, 4:18, 5:18, 6:18, 7:16, 8:20
**literature** [1] - 19:9
**literatures** [1] - 19:14
**LITIGATION** [1] - 1:4
**litigation** [3] - 4:4, 4:14, 18:22
**litigations** [1] - 27:25
**live** [3] - 15:14, 25:1, 25:4
**look** [4] - 8:24, 20:11, 24:12, 28:16
**looked** [1] - 24:14
**looking** [3] - 9:13, 15:6, 15:11
**lunch** [1] - 3:13

**M**

**MAGISTRATE** [5] - 1:10, 15:16, 20:18, 27:17, 29:19
**major** [1] - 26:12
**maladies** [1] - 16:8
**man** [2] - 3:5, 7:13
**manufacturer** [1] - 16:18
**March** [9] - 26:19, 27:12, 27:13, 28:5, 30:18, 30:22, 30:23, 31:1, 31:5
**Mason** [2] - 4:22, 5:1
**matter** [1] - 31:18
**Matthews** [1] - 11:5
**mean** [1] - 9:20, 17:13, 18:11, 19:11, 19:14, 20:4, 20:14, 21:1, 21:24, 26:13, 29:7
**medical** [3] - 4:6, 9:12, 9:15
**meeting** [1] - 30:14
**meetings** [1] - 30:16
**method** [2] - 11:23, 12:4
**methodology** [1] - 29:11
**MICHAEL** [1] - 1:19
**mid** [1] - 10:22
**middle** [1] - 28:24
**mindful** [1] - 14:10
**Miss** [9] - 10:8, 11:6, 11:7, 20:2, 20:8, 22:5, 26:17, 27:3, 29:19
**Mitchell** [1] - 1:6
**month** [1] - 26:2
**months** [2] - 8:18, 13:22
**Moore** [1] - 5:25
**morning** [1] - 12:11
**motions** [13] - 12:1, 13:13, 15:24, 15:25, 19:13, 20:14, 21:20, 22:3, 22:13, 27:4, 27:13, 27:23, 29:6
**move** [1] - 30:17
**moving** [1] - 28:13
**MR** [58] - 3:7, 3:12, 4:2, 4:4, 4:10, 4:22, 4:25, 5:11, 5:14, 5:16, 6:8, 6:22, 7:21, 7:23, 8:3, 8:11, 8:16, 8:21, 9:11, 10:10, 10:14, 10:20, 10:25, 11:4, 11:8, 12:18, 12:25, 14:2, 18:9, 18:13,

20:5, 20:10, 20:15,
20:22, 21:24, 22:1,
24:11, 24:18, 24:21,
25:11, 26:1, 26:10,
27:1, 27:22, 28:3,
28:7, 28:10, 28:12,
28:15, 28:16, 28:19,
28:25, 29:4, 30:7,
30:13, 31:3, 31:10,
31:14
  **MS** [60] - 4:5, 4:17,
4:20, 5:19, 5:21, 5:23,
6:12, 6:19, 7:6, 7:18,
8:4, 8:9, 8:17, 8:24,
9:3, 10:21, 11:11,
12:7, 12:10, 14:4,
14:6, 14:8, 14:24,
15:1, 15:10, 15:19,
16:10, 16:20, 16:25,
17:5, 17:23, 21:13,
22:7, 22:18, 22:21,
23:1, 23:5, 23:9,
23:12, 23:21, 24:24,
25:5, 25:14, 25:19,
25:23, 27:6, 27:10,
27:19, 28:6, 28:8,
29:2, 29:18, 29:22,
30:2, 30:16, 30:21,
30:23, 31:4, 31:6,
31:15
  **multiple** [1] - 24:5
  **MURPHY** [1] - 1:20

**N**

  **name** [2] - 5:1, 15:10
  **Nami** [1] - 2:8
  **narrow** [3] - 15:2,
15:5, 15:21
  **need** [2] - 4:11,
10:6, 10:17, 14:19,
14:25, 15:13, 18:10,
18:14, 19:3, 19:18,
19:20, 22:2, 22:5,
22:22, 22:24, 24:22,
25:17, 26:21, 27:4,
27:6, 30:10, 31:7
  **needed** [1] - 21:3
  **needs** [2] - 19:19,
20:13
  **never** [3] - 13:15,
14:16, 18:17
  **new** [2] - 8:17, 17:17
  **NEW** [1] - 1:1
  **New** [4] - 1:7, 3:6,
27:8, 27:10
  **next** [4] - 5:9, 22:6,
22:11, 25:7
  **nine** [2] - 5:23, 6:19
  **nothing** [6] - 3:8,

7:9, 7:10, 7:11, 7:14,
11:16
  **notify** [1] - 22:9
  **November** [4] - 7:10,
10:22, 13:5
  **number** [19] - 4:14,
5:21, 6:3, 6:5, 6:6,
6:8, 8:15, 11:10, 13:2,
13:3, 13:15, 14:14,
15:9, 16:3, 16:5, 18:5,
18:10, 27:7, 27:8
  **NUMBER** [1] - 1:4
  **Number** [3] - 5:23,
5:25, 6:1
  **nursery** [1] - 6:3

**O**

  **obvious** [1] - 18:15
  **obviously** [6] - 6:14,
9:12, 18:9, 26:11,
26:14, 31:7
  **October** [2] - 7:9,
7:10
  **OF** [1] - 1:1
  **offered** [3] - 3:24,
19:23, 25:20
  **olmesartan** [1] -
16:17
  **OLMESARTAN** [1] -
1:3
  **Olmesartan** [2] -
9:18, 16:7
  **one** [36] - 3:16, 3:20,
4:15, 6:12, 6:22, 8:15,
9:18, 10:14, 11:25,
12:10, 12:11, 14:13,
14:14, 14:15, 14:20,
15:14, 17:7, 17:8,
17:9, 21:14, 23:7,
23:16, 23:22, 23:23,
23:24, 23:25, 24:3,
24:8, 25:16, 25:19,
26:1, 27:8, 27:24,
29:6
  **One** [1] - 1:7
  **ones** [2] - 26:6,
29:24
  **open** [2] - 3:1, 11:6
  **opinion** [2] - 16:21,
29:12
  **opinions** [2] - 16:22,
19:13
  **opportunity** [1] -
17:16
  **oppose** [2] - 19:7,
19:10
  **opposed** [1] - 21:13
  **opposition** [2] -

27:14, 29:1
  **Order** [3] - 5:5, 5:7,
6:20
  **Orders** [1] - 4:21
  **Orleans** [1] - 3:6
  **otherwise** [1] - 23:7
  **ought** [1] - 20:12
  **overdue** [2] - 5:17,
7:9

**P**

  **p.m** [1] - 31:5
  **page** [3] - 4:15, 9:1,
28:25
  **paragraph** [4] - 4:15,
5:17, 9:1, 12:8
  **pare** [2] - 13:16,
13:17
  **paring** [2] - 19:21,
20:2
  **Parker** [1] - 16:10
  **part** [2] - 15:6, 23:20
  **passed** [1] - 8:13
  **pathologist** [2] -
23:22, 23:23
  **pause** [2] - 8:25,
31:12
  **peer** [1] - 19:14
  **people** [12] - 10:7,
11:17, 14:19, 18:14,
18:21, 18:22, 19:1,
23:13, 23:14, 24:1,
24:6, 25:2
  **perfect** [1] - 21:7
  **perhaps** [2] - 13:10,
13:21
  **period** [1] - 17:12
  **permission** [1] - 24:8
  **permitting** [1] - 30:4
  **person** [2] - 9:16,
23:14
  **perspective** [2] -
12:22, 21:7
  **PFS** [14] - 4:5, 4:7,
4:8, 4:9, 5:24, 5:25,
6:2, 6:4, 6:5, 6:7, 7:8,
7:24, 8:5, 9:4
  **PFS's** [1] - 11:19
  **pharamco** [3] -
23:11, 23:12, 24:3
  **pharamco-
vigilance** [3] - 23:11,
23:12, 24:3
  **pharmaco** [4] - 23:3,
23:6, 24:2, 24:5
  **pharmaco-
vigilance** [4] - 23:3,
23:6, 24:2, 24:5

  **phone** [4] - 10:7,
13:6, 13:8, 31:8
  **physician** [1] - 5:1
  **pick** [4] - 9:22, 18:4,
21:21, 25:2
  **picking** [1] - 10:3
  **picture** [1] - 15:7
  **place** [2] - 8:6, 11:23
  **plaintiff** [6] - 6:25,
9:23, 13:2, 17:3, 25:9,
29:21
  **plaintiff's** [2] - 11:21,
17:4
  **plaintiffs** [16] - 3:23,
9:6, 10:5, 11:12,
11:14, 11:18, 12:14,
14:1, 14:10, 14:12,
16:16, 17:16, 20:8,
25:8, 25:24, 27:21
  **PLAINTIFFS** [4] -
1:12, 1:14, 1:15, 1:17
  **plaintiffs'** [4] - 3:25,
15:19, 16:21
  **plate** [1] - 29:5
  **Plater** [1] - 6:1
  **PLATER** [1] - 6:1
  **play** [2] - 28:12,
28:14
  **players** [1] - 21:6
  **Plaza** [1] - 1:7
  **plus** [1] - 17:24
  **point** [10] - 3:20,
4:12, 9:24, 12:6, 13:4,
13:6, 20:7, 20:9, 21:1,
27:24
  **position** [4] - 7:6,
9:11, 14:12, 18:9
  **possible** [1] - 9:21
  **prejudice** [1] - 11:13
  **preliminary** [1] -
3:16
  **premature** [1] -
15:20
  **prescription** [1] -
11:15
  **prevail** [1] - 21:1
  **previously** [2] - 27:5,
27:7
  **primary** [1] - 19:4
  **principles** [1] - 29:16
  **problem** [3] - 10:5,
11:22, 13:23
  **procedure** [1] -
18:20
  **process** [1] - 21:14
  **PRODUCTS** [1] - 1:4
  **progress** [1] - 28:11
  **promise** [1] - 12:3
  **proposal** [1] - 27:15
  **propose** [1] - 27:12

  **proposed** [1] - 4:13
  **prove** [4] - 9:24,
17:12, 17:16, 19:3
  **provide** [1] - 10:17
  **providing** [1] - 11:22
  **pull** [1] - 26:19
  **push** [1] - 19:6
  **put** [7] - 3:22, 3:25,
11:23, 13:9, 19:3,
19:11, 30:5

**Q**

  **qualifications** [1] -
29:9
  **quick** [1] - 26:7
  **quite** [1] - 19:16
  **quotes** [1] - 26:24

**R**

  **raised** [6] - 9:5,
15:23, 20:23, 23:8,
23:10, 24:2
  **raising** [1] - 22:25
  **random** [1] - 18:4
  **randomly** [1] - 18:4
  **range** [1] - 14:18
  **rate** [1] - 6:15
  **rather** [1] - 20:4
  **RAYNA** [1] - 1:16
  **RE** [1] - 1:3
  **read** [3] - 9:4, 23:18,
28:23
  **ready** [2] - 17:24,
17:25
  **real** [2] - 26:7, 26:11
  **really** [14] - 11:20,
12:5, 15:20, 16:20,
19:4, 19:19, 19:20,
19:22, 20:12, 22:22,
26:6, 27:23, 29:14,
30:10
  **realm** [1] - 9:21
  **reason** [3] - 14:14,
17:15, 19:24
  **reasons** [2] - 11:2,
21:9
  **recently** [2] - 6:25,
8:12
  **recognized** [1] - 13:8
  **record** [1] - 28:8
  **records** [9] - 4:6, 5:4,
9:12, 9:22, 9:23,
11:15, 11:17, 11:18,
11:21
  **regarding** [1] - 13:14
  **regulatories** [1] -

23:24

**regulatory** [3] - 12:12, 23:13, 23:23
**related** [1] - 9:18
**relax** [1] - 3:5
**rely** [2] - 26:9, 29:13
**relying** [3] - 22:8, 22:10, 27:7
**remember** [2] - 23:18, 23:19
**remembers** [1] - 5:2
**rep** [1] - 8:1
**repeat** [1] - 29:5
**reply** [2] - 27:14, 27:17
**report** [1] - 7:17
**reports** [10] - 15:21, 18:1, 19:8, 22:6, 22:12, 23:19, 25:7, 26:8, 29:20, 29:23
**representative** [1] - 7:2
**represents** [1] - 10:7
**request** [6] - 5:4, 7:7, 10:4, 25:1, 25:25, 30:17
**required** [1] - 2:7
**research** [1] - 7:12
**RESNIK** [1] - 1:15
**resolve** [1] - 10:11
**respond** [1] - 19:24
**response** [3] - 9:6, 10:6, 11:5
**result** [1] - 11:13
**returnable** [1] - 5:8
**review** [1] - 19:14
**Rhymes** [1] - 6:3
**RICHARD** [1] - 1:13
**rid** [2] - 12:4, 16:3
**rise** [1] - 3:2
**road** [2] - 15:6, 27:2
**ROBERT** [1] - 1:9
**Roland** [1] - 6:9
**rolled** [1] - 17:25
**rooted** [1] - 19:14
**Rule** [2] - 10:12, 29:2
**ruling** [2] - 24:13, 26:4
**rulings** [1] - 15:17

**S**

**save** [1] - 18:2
**schedule** [3] - 27:13, 28:17, 28:20
**scheduling** [1] - 14:20
**Schneider** [3] - 24:4, 25:14, 30:9

**SCHNEIDER** [5] - 1:10, 15:16, 20:18, 27:17, 29:19
**science** [2] - 17:17, 29:13
**scientific** [2] - 16:22, 19:9
**seat** [2] - 3:3, 3:5
**second** [8] - 4:18, 6:18, 6:19, 6:22, 7:12, 7:16, 8:20, 14:17
**seconds** [1] - 10:3
**secrets** [1] - 26:23
**Section** [1] - 2:8
**see** [5] - 5:15, 8:8, 15:21, 19:7, 21:4
**seeing** [1] - 8:24
**seem** [1] - 10:12
**send** [3] - 24:23, 29:20, 29:21
**sense** [5] - 15:20, 20:24, 21:7, 21:10, 26:2
**sensitive** [1] - 15:22
**sent** [5] - 7:9, 10:21, 11:11, 11:14, 12:14
**separate** [2] - 3:23, 15:17
**separately** [1] - 23:6
**serve** [4] - 18:1, 22:5, 26:8, 29:22
**served** [10] - 5:24, 5:25, 6:1, 6:4, 6:5, 6:6, 7:8, 11:17, 12:9, 22:4
**serving** [2] - 25:7, 26:18
**set** [3] - 12:13, 14:14, 25:20
**sets** [2] - 17:17, 27:11
**seven** [1] - 11:10
**several** [1] - 8:18
**severe** [1] - 9:20
**SHARKO** [61] - 1:18, 4:5, 4:17, 4:20, 5:19, 5:21, 5:23, 6:12, 6:19, 7:6, 7:18, 8:4, 8:9, 8:17, 8:24, 9:3, 10:21, 11:11, 12:7, 12:10, 14:4, 14:6, 14:8, 14:24, 15:1, 15:10, 15:19, 16:10, 16:20, 16:25, 17:5, 17:23, 21:13, 22:7, 22:18, 22:21, 23:1, 23:5, 23:9, 23:12, 23:21, 24:24, 25:5, 25:14, 25:19, 25:23, 27:6, 27:10, 27:19, 28:6,

28:8, 29:2, 29:18, 29:22, 30:2, 30:16, 30:21, 30:23, 31:4, 31:6, 31:15
**Sharko** [10] - 10:8, 11:6, 11:7, 20:2, 20:8, 20:20, 22:5, 26:17, 27:3, 29:19
**sheet** [3] - 3:19, 3:22, 8:14
**sheets** [2] - 4:1, 5:17
**short** [1] - 3:24
**shove** [1] - 19:6
**Show** [3] - 4:21, 5:8, 6:20
**showed** [1] - 8:5
**shows** [2] - 11:17, 11:20
**side** [4] - 21:21, 24:17, 24:19, 24:22
**sides** [5] - 16:3, 16:5, 17:21, 17:25, 20:13
**sign** [1] - 7:25
**significant** [4] - 12:21, 13:2, 16:5, 21:14
**similar** [1] - 8:12
**simpler** [1] - 29:4
**simplifies** [1] - 26:15
**simply** [1] - 14:20
**simultaneously** [1] - 18:7
**single** [1] - 20:24
**sit** [1] - 20:12
**situation** [1] - 8:12
**six** [19] - 9:1, 11:14, 11:17, 14:1, 22:18, 23:6, 23:15, 24:12, 24:13, 24:17, 24:19, 24:22, 24:23, 25:10, 26:9, 29:20, 29:23, 29:25
**size** [1] - 29:1
**SLATER** [45] - 1:12, 3:7, 3:12, 4:2, 4:4, 4:10, 6:22, 7:21, 7:23, 8:3, 9:11, 10:10, 10:14, 10:20, 11:8, 12:18, 12:25, 14:2, 18:9, 18:13, 20:5, 20:10, 20:15, 20:22, 21:24, 22:1, 24:11, 24:18, 24:21, 26:1, 26:10, 27:1, 27:22, 28:3, 28:7, 28:10, 28:12, 28:16, 28:19, 28:25, 29:4, 30:7, 30:13, 31:3, 31:10
**Slater** [6] - 12:16, 13:7, 18:8, 20:19,

24:9, 30:17
**someone** [1] - 7:5
**sorry** [3] - 13:23, 22:1, 22:2
**Sorry** [1] - 28:21
**sort** [1] - 12:20
**sound** [1] - 16:22
**speaking** [1] - 30:8
**specific** [21] - 10:4, 10:5, 14:11, 14:18, 16:13, 16:14, 17:1, 17:3, 17:7, 17:24, 18:6, 20:21, 22:3, 22:15, 23:14, 23:20, 24:1, 24:7, 29:7, 29:17
**specifically** [1] - 16:11
**spend** [1] - 29:15
**spending** [1] - 17:20
**spouse** [1] - 8:13
**spread** [3] - 3:19, 3:22, 3:25
**spring** [1] - 31:16
**spruelike** [1] - 16:7
**stage** [2] - 19:20, 24:15
**staggered** [1] - 27:11
**stand** [1] - 13:10
**standard** [1] - 26:23
**start** [3] - 16:17, 26:22, 30:3
**State** [1] - 4:14
**STATES** [3] - 1:1, 1:9, 1:10
**States** [1] - 1:6
**status** [1] - 5:9
**statute** [3] - 15:25, 18:2, 20:3
**steps** [1] - 7:19
**STEVEN** [1] - 1:15
**stick** [1] - 19:17
**sticky** [1] - 29:24
**still** [5] - 4:16, 6:20, 7:20, 12:21, 13:23
**stipulation** [3] - 6:9, 8:22, 11:3
**stipulations** [1] - 6:16
**stragglers** [2] - 11:23, 11:24
**straightforward** [1] - 20:4
**strategy** [1] - 10:3
**strongly** [1] - 21:17
**stuff** [1] - 3:20
**submit** [1] - 9:6
**substitute** [1] - 7:20
**subtle** [2] - 13:11, 13:12

**sucked** [1] - 24:15
**suggest** [1] - 14:25
**suggesting** [2] - 20:21, 25:17
**Summary** [1] - 9:14
**summary** [2] - 11:24, 12:1
**supported** [1] - 16:22
**surviving** [1] - 8:13
**SUSAN** [1] - 1:18
**sympathetic** [1] - 8:4
**sympathies** [1] - 7:13

**T**

**team** [1] - 19:23
**ten** [9] - 14:10, 14:11, 15:23, 17:25, 18:4, 20:3, 22:12, 22:13
**term** [1] - 3:19
**terms** [2] - 18:19, 30:16
**test** [1] - 19:12
**testify** [4] - 15:14, 19:12, 22:24, 25:4
**testimony** [2] - 13:12, 25:1
**THE** [102] - 1:1, 1:9, 3:2, 3:3, 3:3, 3:9, 3:15, 4:3, 4:7, 4:11, 4:18, 4:24, 5:6, 5:12, 5:15, 5:17, 5:20, 5:22, 6:11, 6:14, 7:15, 7:19, 7:22, 8:2, 8:7, 8:10, 8:15, 8:20, 8:23, 9:1, 9:9, 10:2, 10:11, 10:19, 10:23, 11:3, 11:5, 11:9, 11:20, 12:8, 12:23, 13:1, 14:3, 14:5, 14:7, 14:23, 14:25, 15:8, 16:4, 16:15, 16:24, 17:2, 17:8, 18:8, 18:12, 20:2, 20:6, 20:12, 20:16, 21:16, 21:25, 22:2, 22:8, 22:20, 22:23, 23:4, 23:8, 23:10, 23:18, 24:9, 24:17, 24:19, 24:22, 25:3, 25:6, 25:12, 25:17, 25:22, 26:8, 26:25, 27:2, 27:9, 27:16, 27:18, 27:20, 28:2, 28:11, 28:14, 28:18, 28:22, 29:3, 29:5, 29:25, 30:3,

30:12, 30:14, 30:20,
30:22, 30:25, 31:5,
31:7, 31:13, 31:16
  **theirs** [1] - 25:24
  **they've** [2] - 3:24,
9:23
  **thinking** [1] - 15:22
  **thinks** [1] - 26:21
  **Third** [1] - 29:16
  **third** [1] - 14:20
  **three** [2] - 4:15,
23:22
  **timer** [1] - 7:11
  **Title** [1] - 2:7
  **today** [1] - 31:9
  **together** [1] - 19:3
  **took** [3] - 11:13,
16:1, 25:14
  **total** [1] - 24:13
  **totally** [1] - 8:17
  **toxicologist** [1] -
23:24
  **toxicologists** [1] -
23:25
  **track** [2] - 3:19, 4:1
  **training** [1] - 31:16
  **tranche** [1] - 21:19
  **trial** [8] - 13:10, 14:9,
14:14, 14:15, 15:11,
20:20, 20:24, 21:8
  **tried** [1] - 15:4
  **true** [2] - 2:7, 10:12
  **try** [3] - 10:11, 21:11,
26:11
  **trying** [4] - 3:18, 5:3,
21:14, 29:4
  **two** [23] - 4:19, 8:11,
9:1, 9:10, 10:7, 11:12,
13:22, 15:5, 15:13,
16:1, 18:2, 20:3, 20:8,
20:13, 23:21, 23:23,
23:24, 24:1, 27:8,
27:11, 28:13

### U

  **U.S.C** [1] - 2:8
  **under** [2] - 17:19,
19:10
  **unilaterally** [1] -
18:21
  **UNITED** [3] - 1:1,
1:9, 1:10
  **United** [1] - 1:6
  **up** [5] - 11:7, 12:6,
17:25, 24:15, 28:20
  **updating** [1] - 11:18

### V

  **vacuum** [6] - 16:12,
16:15, 17:6, 17:14,
21:15
  **valid** [1] - 10:18
  **variance** [1] - 23:7
  **vested** [1] - 18:22
  **Vickie** [1] - 8:21
  **view** [2] - 19:25,
26:14
  **vigilance** [7] - 23:3,
23:6, 23:11, 23:12,
24:2, 24:3, 24:5

### W

  **Wagstaff** [1] - 6:23
  **wants** [1] - 25:9
  **waste** [1] - 30:6
  **wasting** [3] - 13:16,
17:19, 17:20
  **watch** [1] - 6:13
  **Weather** [2] - 4:2,
9:25
  **Wednesday** [1] -
30:25
  **week** [7] - 22:6,
22:11, 24:25, 25:2,
25:7, 27:14, 30:23
  **weeks** [1] - 12:13
  **welcome** [1] - 3:16
  **Wells** [1] - 6:5
  **Westbrook** [1] - 6:6
  **wide** [1] - 14:18
  **willing** [2] - 15:5,
21:11
  **win** [1] - 21:5
  **word** [2] - 6:14,
25:14
  **works** [1] - 28:17
  **writing** [1] - 26:22

### Y

  **year** [1] - 7:8
  **years** [1] - 28:13
  **yesterday** [8] - 5:24,
5:25, 6:2, 6:4, 6:6,
6:7, 7:7, 12:16
  **Yup** [1] - 27:1

### Z

  **ZOGBY** [1] - 1:19

Exhibit B

Protected Information - Susan Huftless, Ph.D.

1  in Crohn's disease.  Are there other GI

2  disorders for which you are currently or

3  have in the past done research other than

4  Crohn's disease?

5       A.    Yes.  So I work in a GI

6  center.  I've worked with numerous

7  investigators.  So I've worked with

8  individuals with specialty in

9  interventional endoscopy and

10  pancreatitis.  Obesity is considered a GI

11  disorder to many individuals.  And then I

12  have work related to hernia repairs as

13  well.

14            That's -- any -- so my

15  expertise is to work with

16  gastroenterologists in any

17  gastrointestinal-related disorder.  So I

18  don't limit myself to what it would be.

19       Q.    You've never done a study

20  involving celiac disease, correct?

21       A.    I've never done a study

22  involving celiac disease.  That is

23  correct.

24       Q.    Okay.  And before you were

Protected Information - Susan Huftless, Ph.D.

1  retained by counsel, you never did any

2  work involving olmesartan-associated

3  enteropathy or spruelike enteropathy

4  associated with olmesartan use?

5          MS. SUTTON:  Objection to

6      form.

7          THE WITNESS:  No.  No.

8  BY MR. PARKER:

9      Q.   I did not see, Doctor --

10  tell me, are you a member of an editorial

11  board of any journal?

12      A.   I am the -- as of January of

13  this year, the statistics editor -- one

14  of two statistics editor of Gut.

15      Q.   Have you ever served on an

16  FDA panel?

17      A.   I have not.

18      Q.   Doctor, your CV says that

19  you are a contributor to the Cochrane

20  collaborative.  Tell me what that means

21  to be a contributor?

22      A.   So the Cochrane

23  collaborative has researchers from

24  throughout the world that conduct