UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| IN RE: BENICAR (OLMESARTAN) PRODUCTS LIABILITY LITIGATION | MDL No. 2606 |
| THIS DOCUMENT RELATES TO ALL CASES | HON. ROBERT B. KUGLER<br><br>CIVIL NO. 15-2606 (RBK)(JS) |

**PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO EXCLUDE GENERAL CAUSATION OPINIONS OF DEFENSE EXPERT JERROLD TURNER, M.D.**

**MAZIE SLATER KATZ & FREEMAN, LLC**
103 Eisenhower Parkway, Suite 207
Roseland, New Jersey 07068
(973) 228-9898
*Attorneys for Plaintiffs*

On the Brief:
Adam M. Slater, Esq.

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................1

LEGAL ARGUMENT.......................................................................................................1

CONCLUSION..................................................................................................................4

## **TABLE OF AUTHORITIES**

Magistrini v. One Hour Martinizing Dry Cleaning, 180 F.Supp.2d 584 (D.N.J. 2002) ........1

**PRELIMINARY STATEMENT**

Defendants' opposition to the motion to preclude the opinions of Dr. Jerrold Turner leaves no doubt that Defendants simply purchased a resume when they hired Dr. Turner as an expert. Dr. Turner is nothing more than a blank slate upon which Defendants inscribed the never published opinion that there is not general causation. Absent from the opposition is any explication of a real methodology underlying his complete rejection of the peer reviewed consensus that Olmesartan does cause OIE in some patients. Rather, the defense attempts to recast the actual record and create the illusion that Dr. Turner actually considered studies and data that he excluded from his analysis. In their desperation to keep Dr. Turner in this case the defense retreats to claiming that the identification of huge gaps in his analysis goes only to the weight of the evidence and issues for cross-examination. In point of fact, the establishment of an unreachable personal standard designed to achieve a predetermined conclusion, combined with the failure to include important data, or to seriously contend with a scientific consensus, renders the methodology unsound, and inadmissible.

**LEGAL ARGUMENT**

Defendants cannot defend Dr. Turner's methodology, including his complete rejection of the peer reviewed scientific conclusion that Olmesartan causes sprue-like enteropathy in some patients, so they fall back on a plea to allow him to testify based on his "more generalized qualifications," as a pathologist. (Defense brief at 3). Ironically, Defendants claim that Dr. Turner's opinions somehow, "grow naturally and directly out of research [he] has conducted independent of the litigation." (Defense brief at 3, citing Magistrini v. One Hour Martinizing Dry Cleaning, 180 F.Supp.2d 584, 594 (D.N.J. 2002)). However, the defense fails to point to any specific research Dr. Turner has conducted that is relevant to the question here. The defense

1

concedes he has never considered OIE in a clinical or research capacity (potential vague awareness of the publication of a single study is not research), and does not dispute Dr. Turner's complete failure to address the analogies to celiac disease.

Defendants cannot remedy the key methodological flaws. This begins with Dr. Turner's rejection of all dechallenges and rechallenges that do not arise from randomized, controlled studies. Dr. Turner paid lip service to this data in a few isolated spots, but did make it clear that he did not credit this data at all. That is unreasonable, in light of the defense's admission that case reports are admissible, and, "that causation can be established without epidemiological or controlled studies." (Defense brief at 7). Dr. Turner also utterly fails to reliably account for the scientific data he ignored in his report, including for example the FDA's analysis and conclusions.

The Turner test is so bereft of methodological balance that the defense admits it is grounded on studies that are admittedly "underpowered" to answer the question before the Court, which the defense desperately argues should be considered as valuable as case reports – the type of study the defense elsewhere impugns. (Defense brief at 9-10)("Whether or not the ROADMAP and Greywoode studies are "underpowered"…. "It's at least as good as the case reports."). Of course, Dr. Turner was never given, and never considered or contended with, the positive rechallenge documented in the ROADMAP study, fitting even his critera, and found by Daiichi's internal physicians to be probably caused by Olmesartan. This was never provided to him, so he did not weigh it – since this is exactly the type of evidence he says he weighs most heavily, this is a gaping methodological hole that cannot be filled by semantics.

Of significant note, Defendants' efforts to keep Dr. Turner in the case validate the admissibility of the opinions of every one of Plaintiffs' experts. The constant fall back to the refrain that the issues raised go only to the weight, not admissibility of the evidence, must also

apply to Plaintiffs' experts, who stand on solid methodological footing as they relied on and opine consistent with the peer reviewed consensus of causation.  For example, Defendants attack Dr. Stephen Lagana for failing to explicitly state in his report that he applied Bradford Hill, while acknowledging that Dr. Lagana was aware of this criteria and testified to application of certain Bradford Hill factors to support his opinion.  In contrast, Dr. Turner did not mention Bradford Hill at all, so if one applies the arguments attacking Dr. Lagana to Dr. Turner, Dr. Turner is out.  In other words, if Dr. Turner can testify to his opinion, which has never been set forth in and contradicts the peer reviewed literature, Plaintiffs' experts clearly can testify.

The defense brief includes other specific concessions, for example in their effort to offset Dr. Turner's failure to even consider the FDA's analysis and findings, they concede that the FDA based evidence, including implicitly Dr. David Kessler's analysis and opinions, is admissible: "any arguable tension between Dr. Turner's evaluation of the existing science and the FDA's regulatory expression concerning olmesartan is a matter that can be aired in cross-examination before a jury."  (Defense brief at 15-16).  Again, the defense concedes the admissibility of Plaintiffs' experts, knowing that Dr. Turner's approach is so weak that he could never be allowed to testify if the Plaintiffs' experts could not.

## CONCLUSION

For the foregoing reasons, and those set forth in Plaintiffs' initial brief, Dr. Jerrold Turner should be precluded from testifying at trial.

Respectfully,


By: /s/ *Adam M. Slater*
ADAM M. SLATER
Mazie Slater Katz & Freeman, LLC
103 Eisenhower Parkway
Roseland, NJ 07068
973-228-9898
Fax: 973-228-0303
aslater@mskf.net

Dated:  May 1, 2017