# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

IN RE: BENICAR (OLMESARTAN):

:Master Docket No. 15-MDL2606(RBK-JS)

PRODUCTS LIABILITY LITIGATION:

---

## ORDER TO ESTABLISH QUALIFIED SETTLEMENT FUND

THIS COURT, upon consideration of the following:

1. THIS MATTER HAVING come before the Court upon the Motion of Plaintiffs, by Plaintiffs' Negotiating Committee "PNC", to approve an Order Establishing a Qualified Settlement Fund as required under the Master Settlement Agreement, as amended ("MSA"), and establishing ARCHER Systems, LLC as the Qualified Settlement Fund Administrator as selected by the PNC and as authorized to do so under the MSA.

2. Under the terms of the MSA, as amended, Daiichi Sankyo has agreed to pay the aggregate amount of $358,000,000 less the amount paid by Daiichi Sankyo to the Claims Administrator for Administrative Expenses as the Settlement Funds into a Qualified Settlement Fund established pursuant to the terms of the MSA.

3. By order of this Court, a Qualified Settlement Fund ("QSF") shall be established within the meaning of section 468B of the Internal Revenue Code of 1986, as amended ("Code") and Treasury Regulation sections 1.468B-1, *et seq.*, and remain subject to the continuing

jurisdiction of this Court until the funds in the QSF are distributed in their entirety or upon further order of this Court, consistent with Treasury Regulation Section 1.468B-1(c)(1).

4. This Court has jurisdiction over this matter under Treas. Reg. Section 1.468B-1(c)(1), which states in relevant part that a QSF "is established pursuant to an order of, or is approved by, the United States, any state (including the District of Columbia), territory, possession, or political subdivision thereof, or any agency or instrumentality (including a court of law) . . . and is subject to the continuing jurisdiction of that governmental authority."

5. PNC request that the Court approve the engagement of ARCHER Systems, LLC as the administrator of the QSF ("QSF Administrator"). ARCHER possesses the requisite resources and experience to properly and effectively set-up and administer the QSF. ARCHER's address is as follows: 1775 Saint James Place, Suite 200, Houston, Texas 77056. ARCHER submits personally to the jurisdiction of this Court. ARCHER, as the QSF Administrator, will be authorized to make distributions from the QSF consistent with the MSA and this Order. Should ARCHER experience dissolution or bankruptcy, its appointment as QSF Administrator shall terminate and PNC will seek Court approval of a successor QSF Administrator.

6. All "Settlement Funds" required to be paid by Daiichi Sankyo under the terms of the MSA, will be deposited into the QSF, pursuant to that Agreement. Any tort liability of Defendants to the Qualifying Program Claimants, as those terms are defined in the MSA, shall terminate with its payments of the Settlement Funds into the QSF.

7. The QSF Administrator shall be empowered to take all actions as the QSF Administrator deems necessary to assure that the QSF is treated as a "qualified settlement fund" under Section 468B of the Internal Revenue Code and the Regulations promulgated pursuant thereto. In the event that any terms of this Order shall at any time be considered cause for the

Fund to fail to qualify as a "qualified settlement fund" per Section 468B of the Code together with any and all Treasury Regulations and Internal Revenue Service notices, Announcements and directives thereunder, such offending portion of this Agreement shall be considered null, void, and of no effect, without any action by any court or by the QSF Administrator, so that this Fund continues to qualify as a "qualified settlement fund" in compliance with Section 468B of the Code and the applicable administrative authority and announcements thereunder. In the event that this paragraph applies to render an offending Section null, void, or of no effect, the parties shall so advise the Court and the remainder of this Agreement shall not be affected thereby, and each remaining term and Section of the Agreement shall be valid and enforced to the fullest extent permitted by law.

8. The Settlement Fund is the sole property of the QSF. No portion of the Settlement Funds shall be made available to the Qualifying Program Claimants as determined under the MSA in any fashion, except as specifically set forth in the MSA. Until such time as monies are distributed from the QSF, the Qualifying Program Claimants and PNC shall not possess any rights to demand or receive any portion of the Settlement Funds or to mortgage, pledge or encumber the same in any manner. To the extent possible, this shall be construed so as to prevent the Qualifying Program Claimants and PNC from being in constructive receipt, as determined under federal income tax principles, of any amounts held by the QSF.

9. The Parties request that no bond be required, provided that all settlement proceeds, which include all principal and interest earned thereon, shall be deposited in an account held in custody at Huntington Bancshares Incorporated (the "Bank"), a financial institution with headquarters in the state of New York for the benefit of, and titled in the legal name of, the Olmesartan Qualified Settlement Fund. The Bank shall invest monies deposited pursuant to the

instructions of the QSF Administrator. Such investments may be (a) with third parties in instruments/securities comprised of United States Agency, Government Sponsored Enterprises or Treasury debt securities or obligations (maturities not to exceed five years at a time of purchase) or mutual funds invested solely in such instruments (average maturity not to exceed five years); (b) with third parties in cash equivalent securities including SEC registered money market funds and collateralized money market accounts; (c) in one or more checking accounts at the Bank up to current FDIC insurance limits; and (d) certificates of deposit that are fully insured by the Federal Deposit Insurance Corporation ("FDIC") through use of the Certificate of Deposit Account Registry Services ("CDARS"), and/or Insured Cash Sweep ("ICS") pursuant to the CDARS/ICS Deposit Placement Agreement with the Bank. The Bank shall be responsible for following the written investment instructions of the QSF Administrator. The QSF Administrator shall be responsible for ensuring that a principal preservation investment policy is implemented. Notwithstanding the foregoing, the Bank shall not be allowed to distribute any income or principal from the QSF except upon written instructions of the QSF Administrator, or, if requested, upon the order of this Court upon the joint motion of the Parties. The QSF Administrator retains the right to remove the Bank with or without cause, in its sole and absolute discretion. The QSF Administrator may designate a replacement bank upon the written consent of PNC and this Court. In the event of such replacement, the terms and conditions of this paragraph, including without limitation, those addressing bond requirements, investments, and distributions from the QSF, shall apply to any such replacement bank. The QSF Administrator shall not be liable for any losses as a result of investing the Settlement Funds as directed by the Court. Any such losses shall not be recoverable from the Parties, and the Parties shall have no responsibility for the QSF Administrator's performance. Any interest or investment income earned on the account(s) of the

QSF shall inure to the benefit of the QSF and shall be used first to pay any taxes and tax return administration/preparation costs for the QSF, and second, if there are any funds left over, to contribute to payment of claims administration costs (including, without limitation, the expenses of tax attorneys and accountants bank fees, wire fees, check stoppage fees, audits, and legal costs), and any other costs associated with administration of the QSF. QSF Administrator shall direct any and all payments of such interest or investment income and any interest accrued on the QSF account.

10    The QSF Administrator shall disburse funds from the QSF in accordance with the terms of the MSA and shall withhold from payments to the Qualifying Program Claimants the amounts necessary for the common benefit fund and for the satisfaction of liens as required by the MSA.

10.    Within fifteen (15) days of the end of each calendar quarter, the QSF Administrator will prepare and deliver QSF Statements ("Statements") to the PNC and the Court (if requested). The Statements shall include a statement of receipts, investment earnings, and disbursements. The management of the QSF shall be subject to review by this Court.

11.    QSF Administrator shall have the right to rely upon any affidavit, certificate, letter, notice, electronic mail or other document believed by the QSF Administrator to be genuine and sufficient, and upon any other evidence believed by the QSF Administrator, in its reasonable judgment, to be genuine and sufficient, which may be provided to the QSF Administrator by the PNC.

12.    As provided by the terms of the MSA, Defendants, as defined in the MSA, and their insurers shall in no way be responsible for the expenses of the QSF Administrator or the administration of the Qualified Settlement Fund. Nor shall Defendants or their insurers in any way

be associated with the administration of the Qualified Settlement Fund or have any liability with regard to the conduct of the QSF Administrator or to the QSF itself. Further, upon payment of the Settlement Funds as required by the Master Settlement Agreement, as amended, Defendants and their insurers shall have no liability to the claimants under the MSA.

13. QSF Administrator shall be indemnified and held harmless by the PNC or any claimants and/or their counsel, (current and/or future, as applicable) from any claims made by any alleged lien holder, or other person or entity that attempts to assert a right of payment, reimbursement or garnishment against the QSF. Should the QSF Administrator be named as a party to, or threatened to be made a party to, any threatened, pending or completed action, suit or proceeding of any kind, whether civil, administrative or arbitrative, and whether brought by or against or otherwise involving the QSF, by reason of the QSF Administrator having served in any capacity on behalf of the QSF, the QSF Administrator shall be indemnified and held harmless by PNC, or any Qualifying Program Claimants (current and/or future, as applicable) against reasonable expenses, costs and fees (including attorney fees), judgment, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by the QSF Administrator in connection with or resulting from such actual or threatened action, suit or proceeding; except to the extent that it is finally determined by this Court that the QSF Administrator was negligent or acted with willful misconduct in connection with the administration of the QSF.

13. The QSF, by and through the QSF Administrator, may purchase and assign any structured settlements created under any release agreements with individual Qualifying Program Claimants. Any structured settlement annuity contract shall be issued by a life insurance company

that is rated A+ or better by A.M. Best Company.[1] The claims made by individuals who suffered (or will suffer) personal injury caused by defendant's products are (or will be) made on account of physical bodily injury and/or wrongful death and arise out of alleged liability in tort or violation of law. Such Qualifying Program Claimants (and their attorneys, as applicable), shall agree in writing to a discharge of the proceeds from the QSF and the QSF Administrator's liabilities in the making of any structured settlement payments, also known as periodic payments, by executing, along with the QSF Administrator, any necessary documents required or related to the discharge of those liabilities

14.     Upon final distribution of all monies paid into the QSF, the QSF Administrator shall take appropriate steps to wind down the QSF and, thereafter, be discharged from any further responsibility with respect to the Settlement Payment.

**DOES HEREBY ORDER** that:

1.      The Olmesartan Qualified Settlement Fund shall be established as a QSF within the meaning of Treas. Reg. § 1.468B-1 and pursuant to the jurisdiction conferred on this Court by Treas. Reg. § 1.468B-1(c)(1) and shall be a trust under state law. The QSF shall remain subject to the continuing jurisdiction of this Court consistent with Treasury Regulation Section 1.468B-1(c)(1).

---

[1] Structured Settlement Payments are assigned to a qualified assignee by entering into qualified assignments of such structured settlement payments within the meaning of Section 130(c) of the Code. The qualified assignee shall, respecting each person who is to receive periodic payments under a settlement agreement, purchase one or more qualified funding assets within the meaning of Section 130(d) of the Code to fund any structured settlement payments assigned to the qualified assignee.

2. ARCHER Systems, LLC, is hereby appointed as QSF Administrator pursuant to the terms, conditions, and restrictions of this Order, and is hereby granted the authority to conduct any, and all activities necessary to administer and ultimately wind down the QSF as described herein (including, without limitation, being authorized to make disbursements from the QSF consistent with the MSA).

3. Huntington Bancshares Incorporated is hereby appointed as the financial institution at which the QSF Administrator will establish bank and investment accounts for the QSF in accordance with this Order. The PNC shall establish the account for the QSF at Huntington Bancshares Incorporated and provide wire instructions, to Defendants, within three (3) days of the entry of this Order.

4. This Order is subject to amendment by the Court *sua sponte* or upon application of the Parties. This Court retains jurisdiction over all matters covered by, or related to, this Order.

**SO ORDERED.**

Date: September 20, 2019

HONORABLE ROBERT B. KUGLER

United States District Judge